No. 88,571

STATE OF KANSAS, *Appellee*, v. JOSEPH DODDS MORTON,
*Appellant.*
(86 P.3d 535)

Opinion filed March 26, 2004.

*Janine Cox,* capital appellate defender, argued the cause and was on the brief for appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *James L. Spies,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Joseph Dodds Morton appeals his first-degree murder and aggravated robbery convictions. He argues that he could not be convicted of first-degree murder on the combined theories of premeditation and felony murder, that the evidence on premeditation presented at his trial was insufficient, and that prosecutorial misconduct and cumulative error require reversal.

Morton was discharged from his employment at a grocery store. He decided to rob the store; he stole an unloaded gun from his mother by breaking into her locked bedroom, loaded the gun with loose bullets already in his possession, and returned to the store with the excuse of returning his uniform.

Before entering the store, Morton parked across the street to check the number of cars in the parking lot and ensure that only the manager remained inside after hours. He hid the gun between his two work shirts. When he entered, store manager David Mor-

rell asked about Morton's box cutter and bailer key. Morton then left the store and sat in his car for approximately 2 minutes, pondering whether he should commit the crime. He then reentered the store and told Morrell he "was [t]here for the money." Morrell offered no resistance and led Morton to the store office, where money was on a desk. According to Morton, he then squeezed the trigger of the gun. He said he was not sure where he was pointing the gun and fired to scare the manager. After pulling the trigger, however, he heard the manager hit the floor. Morton left the store, took a turn in the parking lot, and then returned to the store office. He stole a video recorder and videotape, destroyed security monitors, and took a cordless phone to ensure that Morrell could not call the police. According to Morton, when he returned to the office, he saw Morrell slumped on the floor. He admitted that Morrell looked dead. He did not check him for signs of life or summon help.

Other evidence at trial demonstrated Morrell had been shot in the face from a distance of not more than three feet.

After the crime, Morton went to play billiards with friends. He told his girlfriend that he robbed the store, purchased stereo equipment for his car and 2 pounds of marijuana, and took his girlfriend shopping. A few days later, Morton offered to pay a friend to destroy the security videotape and then fled the state. He eventually confessed to the crime, making a recorded statement to the police.

At trial, the jury received the following Instruction No. 9:

"In this case, the State has charged the defendant Joseph Dodds Morton with one offense of Murder in the First Degree and has introduced evidence on two alternative theories of proving the crime.

"The State may prove murder in the first degree by proving beyond a reasonable doubt that the defendant killed David Morrell intentionally and with premeditation or in the alternative by proving beyond a reasonable doubt that the defendant killed David Morrell and that such killing was done while in the commission of a felony or in flight from attempting to commit a felony, to-wit: aggravated robbery, as fully set out in these instructions.

"Here evidence is presented on the two alternate theories of proving the crime charged, you must consider both in arriving at your verdict."

Instruction No. 10 stated, in part:

"If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you will enter a verdict of guilty."

During closing argument, the prosecutor said:

"Was this killing premeditated? That's the second question we want to look at. And to look at that question, we look at the jury instructions. And if you remember in the jury instructions, premeditation means to have thought it over beforehand for any length of time. Premeditation does not necessarily mean that somebody has to plan it out weeks or months beforehand. And if you remember—you look at that police statement. Detective Zeigler's last question was, okay, did you plan this out last week or weeks before and he said no. But it doesn't have to be weeks or months before.

"We know he walked off the job on Friday. We don't know, though, if he started thinking about it Saturday or Sunday or Monday or Tuesday. But we do know that he started thinking about it before he got to the Save-A-Lot store. And remember one thing. Premeditation means to have thought over the matter beforehand for any length of time."

The prosecutor then gestured with her fingers as though she was firing a gun and continued: "That can be premeditation under the laws of the State of Kansas. One squeeze of the trigger is all it takes." The defense did not object.

The jury returned a guilty verdict, but its verdict form stated the jurors were "unable to agree whether the defendant is guilty of Murder in the First Degree on the theory of premeditated murder or felony murder." The jury "unanimously [found] the defendant guilty of murder in the first degree on the combined theories of premeditated murder and felony murder."

*Conviction of First-Degree Murder on Combined Theories*

Morton breaks this first issue in two, presenting it first as a violation of his right to a unanimous verdict and second as an error in instructions. Both challenges, when reduced to their essence, require us to decide a question of law, and our review is therefore unlimited. See *State v. White*, 275 Kan. 580, 597-98, 67 P.3d 138 (2003).

Like the defendant in the recent case of *State v. Hoge*, 276 Kan. 801, 80 P.3d 52 (2003), Morton points to language from *State v. Vontress*, 266 Kan. 248, 262, 970 P.2d 42 (1998), and *State v.*

*Wakefield*, 267 Kan. 116, 139, 977 P.2d 941 (1999), to support this argument. *Wakefield* merely repeated the language from *Vontress*: "The *Vontress* court observed that as stated in the statute, premeditated murder and felony murder were separate and distinct offenses." *Wakefield*, 267 Kan. at 139.

This language is confusing when considered in isolation. It is inconsistent with previous and succeeding Kansas case law, as well as the reasoning and outcome of the cases in which it appears. As Justice Gernon observed in *Hoge*, the statement was dicta, included in *Vontress* without any analysis of whether premeditated murder and felony murder actually constitute separate crimes. *Hoge*, 276 Kan. at 809.

Before *Vontress* and *Wakefield* were decided, this court had stated clearly: "Premeditated and felony murder are not separate, distinct offenses but are two separate theories under which the crime of first-degree murder may be committed." *State v. McKinney*, 265 Kan. 104, Syl. ¶ 1, 961 P.2d 1 (1998); see also *Hoge*, 276 Kan. at 809 (premeditated murder, felony murder "merely different theories of proving the required elements of premeditation and intent for the crime of first-degree murder") (citing *State v. Chism*, 243 Kan. 484, 491-92, 759 P.2d 105 [1988]; *State v. Matson*, 260 Kan. 366, 372, 921 P.2d 790 [1996] (harsher sentence for premeditated murder is "just that, a sentence — not a separate crime"); *State v. Barncord*, 240 Kan. 35, 37-38, 726 P.2d 1322 [1986]; *State v. McCowan*, 226 Kan. 752, 759-61, 602 P.2d 1363 [1979]). In essence, the felonious conduct proved in a felony murder is a stand-in for the deliberation and premeditation usually required to be proved in a first-degree murder case. *Hoge*, 276 Kan. at 809 (quoting *State v. Branning*, 271 Kan. 877, 887, 26 P.3d 673 [2001]).

In *Vontress*, the jury was presented with a verdict form similar to the one used in this case. During deliberations it marked the form to indicate that the first-degree murder conviction was based on the jury's unanimous agreement on the defendant's guilt of premeditated murder *and* its unanimous agreement on the defendant's guilt of felony murder. *Vontress*, 266 Kan. at 261-62. The defendant received the harsher sentence available only for premeditated murder. 266 Kan. at 250-51. The defendant appealed,

arguing the verdict was ambiguous. We held that there was no ambiguity. The jury had found the defendant guilty under each theory of first-degree murder, and his sentence for premeditated murder was not illegal. 266 Kan. at 264.

The *Wakefield* jury also was presented with a verdict form similar to the one used in this case. See 267 Kan. at 137. In that case, the jury selected all three options on the form; the jurors unanimously found the defendant guilty of premeditated murder and of felony murder, but they also said they were unable to agree under which theory the defendant was guilty. Again, the defendant received the harsher sentence available only for premeditated murder. We again affirmed, holding the harsher sentence was legal because the order of the jury's options on the verdict form meant the "jury first unanimously found Wakefield guilty of premeditated murder and then unanimously found Wakefield guilty of felony murder prior to finding Wakefield guilty on the combined theories." 267 Kan. at 141.

In *State v. Davis*, 268 Kan. 661, 678-79, 998 P.2d 1127 (2000), the defendant argued on appeal that he was denied his right to jury unanimity on his first-degree murder conviction for aiding and abetting the crime because the jury had not agreed on either premeditation or felony murder as the theory of guilt. We recited the alternative means rule of *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]);

" ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]" ' " *Davis*, 268 Kan. at 679.

Under this rule, we upheld the verdict because each "means" of committing first-degree murder — aiding and abetting a premeditated killing or participating in a felony murder — was supported

by sufficient evidence. *Davis*, 268 Kan. at 680-81. Jury unanimity on either means was not required.

The holding of *Davis* was not only consistent with *Timley*; it also followed from pre-*Timley* case law in Kansas and United States Supreme Court precedent.

In *State v. Wilson*, 220 Kan. 341, 345, 552 P.2d 931 (1976), we had upheld a first-degree murder conviction, stating, under the alternative means rule:

"If a verdict of first degree murder can be justified on either of two interpretations of the evidence, premeditation or felony murder, the verdict cannot be impeached by showing that part of the jury proceeded upon one interpretation of the evidence and part on another."

In *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991), the Supreme Court examined a conviction for first-degree murder obtained after the prosecution had advanced both premeditation and felony murder theories. The majority, citing *Wilson* among many cases from various states that had upheld such a practice, rejected the defendant's contention that due process was offended by his conviction on the combined theories. 501 U.S. at 630-45.

Regardless of whether we consider jury unanimity a federal constitutional guarantee or a state statutory right, see K.S.A. 22-3421, these cases confirm that Morton got all that he was entitled to in this case. Although we know from the verdict form that Morton's jury could not agree on premeditation or felony murder, it was unanimous as to his guilt of first-degree murder. That was enough as long as the evidence of each means was sufficient. Instruction and conviction on the combined theories was proper. See *Hoge*, 276 Kan. at 817. Moreover, because Morton was not given the harsher sentence appropriate only for a unanimous conviction under a premeditation theory, his sentence also would pass muster. See *Wakefield*, 267 Kan. at 136; *Vontress*, 266 Kan. at 264.

### Sufficiency of the Evidence of Premeditation

As discussed above, in order to uphold a conviction based on alternative means under *Timley*, we must see sufficient evidence of each means in the record before us. See *Timley*, 255 Kan. at

288-90. Morton's next argument is that the evidence of premeditation presented at his trial was insufficient.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

We have recognized several factors that will give rise to an inference of premeditation:

"(1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless. The jury has a right to infer premeditation from the established circumstances if the inference is a reasonable one." *State v. Murillo*, 269 Kan. 281, Syl. ¶ 2, 7 P.3d 264 (2000).

We see ample evidence to support the second and third factors in the record before us.

Morton admitted Morrell did nothing to provoke him. There was no resistance on the manager's part.

In addition, Morton's actions before entering and reentering the store and after the shooting reflected careful initial planning, reconsideration and a determination to proceed, and callous disregard of the consequences. Morton admitted deciding ahead of time to rob the store. He then went to no small trouble to steal the gun from his mother and prepared an excuse to use in the event he was questioned about his reappearance at the store after being discharged from employment. He then drove to the store and parked across the street, where he could carefully observe how many cars remained in its parking lot, guaranteeing that he would be alone with Morrell after business hours. After entering the store for the first time, he left and sat in his car awhile, thinking through his plan again and deciding to proceed. He then reentered the store and followed Morrell to the store office, where he took the money on the desk.

After intentionally squeezing the trigger, shooting Morrell in the face, and hearing Morrell hit the floor, Morton left the store a

second time. He returned to his car, "took a turn around in the parking lot," and apparently decided he had not done enough to cover his tracks. He entered the store a third time and observed the apparently lifeless Morrell on the floor. Morton did nothing to assist Morrell. Instead, he stole or destroyed the security camera and videotape and monitors that might have led to his apprehension by law enforcement. Morton then went out to socialize, playing billiards and purchasing marijuana. He later offered to pay a friend to destroy the security videotape and then left town.

With all of this evidence in the State's favor, some of it from the defendant himself, members of the jury could have reasonably disregarded Morton's story that he fired the gun only to scare Morrell and did not know where it was pointing. There was ample evidence to support premeditation.

### Prosecutorial Misconduct in Closing Argument

When there is no contemporaneous objection to a prosecutor's argument, we reverse only if the prosecutor's misconduct rises to the level of violating a defendant's right to a fair trial and denies the defendant his or her Fourteenth Amendment right to due process. See *State v. McHenry*, 276 Kan. 513, 522, 78 P.3d 403 (2003) (citing *State v. Lumley*, 266 Kan. 939, 964-65, 976 P.2d 486 [1999]). Further, we generally employ a two-step process to analyze prosecutorial misconduct claims. First, we decide whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, we decide whether the comments constituted plain error; that is, whether the statements were so gross and flagrant that they could have prejudiced the jury against the defendant and denied him or her a fair trial. If so, reversal is required. *McHenry*, 276 Kan. at 522; *State v. McCorkendale*, 267 Kan. 263, 279, 979 P.2d 1239 (1999).

In this case, the prosecutor's questionable conduct consisted of gesturing with her fingers as though she were firing a gun and stating: "That can be premeditation under the laws of the State of Kansas. One squeeze of a trigger is all it takes." This was not a comment on the evidence but a purported statement of controlling law. Because a misstatement of controlling law denies a criminal

defendant his or her right to due process, we agree with the defense that the alleged error must be reviewed on appeal despite the absence of an objection at trial.

In *State v. Pabst*, 273 Kan. 658, 659, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002), this court held that premeditation was defined adequately in Pattern Instructions for Kansas (PIK) Crim. 3d 56.04(b), as "to have thought over the matter beforehand." In our view, premeditation "means something more than the instantaneous, intentional act of taking another's life." *Pabst*, 273 Kan. at 660.

In *Pabst*, the prosecutor had said:

" '[T]here's no amount of time required.

. . . .

" 'You notice that there's no time element in premeditation. There's no interval that's required. *There's no plan.* You don't have to think about it for weeks.

. . . .

" 'You don't have to think about it for weeks, days, hours, 50 minutes, ten minutes. It means to have thought over the matter beforehand. *It's the conscious act of a person.*' " *Pabst*, 273 Kan. at 661.

We held that this language did not constitute a misstatement of the law and thus did not qualify as prosecutorial misconduct.

However, we cautioned prosecutors to read *State v. Holmes*, 272 Kan. 491, 33 P.3d 856 (2001). In *Holmes*, the prosecutor had said: "[P]remeditation can occur in an instant. That's the law in the State of Kansas." 272 Kan. at 497. We held that this definition did constitute a deliberate misstatement, noting the prosecutor had been cautioned in the instructions conference before argument began. 272 Kan. at 495, 499-500. In *Pabst*, we amplified that holding by warning prosecutors to avoid the use of the word "instant"or any synonym or motion that would convey that message. *Pabst*, 273 Kan. at 662.

Later, in *State v. Doyle*, 272 Kan. 1157, 1163, 38 P.3d 350 (2002), we also found the prosecutor's statement that "something can be premeditated as soon as it happens" to be a misstatement of the law. In that case, however, this court saw nothing in the record to indicate the misstatement was deliberate and held it to be harmless. 272 Kan. at 1165.

When the prosecutor in this case pantomimed the firing of a gun and made her accompanying comment that "[o]ne squeeze of a trigger is all it takes," she conveyed the message that premeditation can be instantaneous, or virtually so. This definition of premeditation approximated those given by the prosecutors in *Holmes* and *Doyle*, and we conclude that she misstated Kansas law. Although she also mentioned the correct definition from the jury's instructions more than once, we do not regard this as a cure for her colorful misstatement of such a critical point — a definition of one of the crime's essential elements.

The defense argues that we should also hold that the prosecutor's conduct was deliberate rather than unintentional because she was a "seasoned veteran." Morton contends that the prosecutor necessarily knew better and purposely ignored what she knew to bolster weak evidence of premeditation.

We can go along with defendant approximately halfway. Morton is correct that an experienced prosecutor such as the one in his case should have been well aware of this court's and the Court of Appeals' numerous recent cases on prosecutorial misconduct and/or the definition of premeditation. See, *e.g., Pabst,* 273 Kan. at 661-62 (prosecutor should avoid temptation to use synonym of "an instant"); *Holmes,* 272 Kan. at 499-500 (prosecutor's deliberate misstatement "premeditation can occur in an instant" constitutes reversible error); *State v. Lockhart,* 24 Kan. App. 2d 488, 491-93, 947 P.2d 461 (1997), *rev. denied* 263 Kan. 889 (1997) (prosecutorial misconduct constituted reversible error where prosecutor stated defendant lied). This prosecutor should have known better and apparently did, given her references to the correct definition in the jury instructions. As our earlier discussion makes evident, however, we cannot agree with Morton that the State's evidence of premeditation was weak. We do not discern any motivation for deliberate misconduct.

That being said, we are nevertheless compelled to hold here that the prosecutor's misstatement regarding premeditation requires reversal. Although we see plenty of evidence of premeditation in Morton's behavior, when judged under the correct definition, we know in this particular case that not every member of the jury was

willing to convict on that basis. Because of the jury's specific statement in its verdict form that it could not agree unanimously on the premeditation theory, we are not comfortable calling the prosecutor's error harmless beyond a reasonable doubt. Morton is therefore entitled to reversal and a new trial.

### *Cumulative Error*

We do not reach the defendant's argument on cumulative error. We find only one error in this trial, and it is reversible in and of itself.

Reversed and remanded for new trial.