No. 94,815

STATE OF KANSAS, *Appellee,* v. JOSEPH DODDS MORTON, *Appellant.*
(153 P.3d 532)

Opinion filed March 16, 2007.

*Ezra J. Ginzburg,* of Topeka, argued the cause and was on the briefs for appellant.

*Michael A. Russell,* chief deputy district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: In this direct appeal from his conviction of first-degree murder and aggravated robbery on retrial, defendant Joseph Dodds Morton alleges that (1) prosecutorial misconduct in the first trial barred a new trial on a first-degree murder charge; (2) the district court's original ruling on a motion in limine excluding certain expert testimony should have controlled the issue on retrial; and (3) the State failed to prove premeditation beyond a reasonable doubt.

Defendant's initial convictions stemmed from a March 2001 robbery of a grocery store at which he had been employed; during the robbery, Morton shot and killed the store manager. At Morton's

first trial, the jury unanimously found him guilty of first-degree murder and aggravated robbery, although jurors were unable to agree on whether the underlying first-degree theory was premeditation or felony murder. On direct appeal, we determined that the prosecutor had committed reversible misconduct by suggesting that premeditation can take place in an instant; she had held up her hand in the shape of a gun and pretended to pull its trigger, saying: "One squeeze of the trigger is all it takes." *State v. Morton*, 277 Kan. 575, 86 P.3d 535 (2004). At the time, we declined to find the prosecutor's conduct deliberate. But we agreed that, given some jurors' reluctance to convict on the basis of premeditation, the misconduct was not harmless beyond a reasonable doubt. 277 Kan. at 585-86.

On remand, before retrial, Morton filed a motion to dismiss the first-degree murder charge. He argued that intentional prosecutorial misconduct in his first trial barred a new proceeding on that charge under the Double Jeopardy Clause. See U.S. Const. Amend. 5; U.S. Const. Amend. 14; Kan. Const. Bill of Rights, § 10. The district court rejected the defendant's motion, noting that our opinion clearly contemplated a new trial on both the first-degree murder and aggravated robbery counts.

Morton also sought on remand to enforce an in limine order entered before his first trial. That order had prevented the State from presenting the testimony of Dr. William Newhouse, a ballistics expert who intended to testify that the fatal shot was fired from 15 inches to 18 inches away. At a preliminary hearing before the first trial, the district court granted a defense motion in limine because the State had produced Newhouse's report just a few days before trial was scheduled to begin. At that point, Morton was unable to prepare adequately for trial regarding the expert's findings; he was incapable of retaining his own competing expert; and he would have been prejudiced had the testimony been permitted. During the first trial, the coroner, Dr. Erik Mitchell, testified that the fatal shot was fired from "intermediate range," meaning from between several inches and 3 feet away. He also testified that the path of the bullet through the victim's body was roughly horizontal to the floor.

On remand, defendant argued that the law of the case restricted the district court from reconsidering its previous ruling on the limine motion. After a hearing, the district court reversed its earlier position and permitted Newhouse to testify in the new trial. The fear of prejudice from late disclosure of Newhouse's report had dissipated during the time it took Morton to appeal and obtain reversal and remand. The district court also concluded that the law of the case doctrine applied only to preclude relitigation of issues decided on appeal. The suppression of the Newhouse testimony at the first trial was not raised on Morton's appeal.

At the second trial, the jury again unanimously found defendant guilty of first-degree murder and aggravated robbery. Again, jurors could not agree on the underlying theory on the murder charge. Defendant received the same sentence as he had received after his first trial.

### Prosecutorial Misconduct as a Bar to Retrial

The Double Jeopardy Clause of the United States Constitution protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See, e.g., *State v. Schoonover,* 281 Kan. 453, 463, 133 P.3d 48 (2006) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 [1969], *overruled on other grounds Alabama v. Smith,* 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 [1989]). We have previously recognized that the language of the Fifth Amendment to the United States Constitution guarantees no greater double jeopardy protection to an accused than does § 10 of the Kansas Constitution Bill of Rights; the provisions are coextensive. See *Schoonover,* 281 Kan. at 474; *State v. Thompkins,* 271 Kan. 324, 336-37, 21 P.3d 997 (2001); *State v. Williams,* 268 Kan. 1, 6, 988 P.2d 722 (1999).

The Kansas Legislature attempted to codify the constitutional guarantees against double jeopardy in K.S.A. 21-3107 and K.S.A. 21-3108. *Thompkins,* 271 Kan. at 336-37; *Williams,* 268 Kan. at 6-7. K.S.A. 21-3108 provides, in pertinent part, that a second prosecution is not barred if a subsequent proceeding resulted in the

invalidation, setting aside, reversal, or vacating of the conviction, unless the defendant was adjudged not guilty.

Whether a particular criminal defendant's protection against double jeopardy was violated is a question of law over which we have unlimited review. See *Thompkins*, 271 Kan. at 337.

Generally, in Kansas, "[a]n accused waives his right to plead double jeopardy when after conviction he applies for and is granted a new trial." *State v. Bloomer*, 197 Kan. 668, 675, 421 P.2d 58 (1966), *cert. denied* 387 U.S. 911 (1967). Further, "when a new trial is granted on the motion of the defendant in a criminal prosecution, the granting of the same places the party accused in the same position as if no trial had been had. [Citations omitted.]" *State v. Osburn*, 216 Kan. 638, 641-42, 533 P.2d 1229 (1975).

There is, however, a recognized exception to this general rule for certain egregious prosecutorial misconduct, under the authority of *Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982).

In that case, Bruce Kennedy had been charged with theft. A series of sustained objections prevented the prosecutor from eliciting certain testimony. The prosecutor nevertheless returned to the well one more time. He asked the witness if the reason he had never done business with the defendant was the defendant's status as a crook. Defendant's resulting motion for a mistrial was granted. After a second trial led to his conviction, Kennedy persuaded the Oregon Court of Appeals that double jeopardy should have barred the retrial because the prosecutor's conduct in the first trial was "overreaching." 456 U.S. at 668.

The United States Supreme Court reversed the Oregon Court of Appeals and remanded for further proceedings, but it noted that double jeopardy would bar retrial if the prosecutor had intentionally provoked the defendant's request for mistrial. 456 U.S. at 676-79.

We have discussed *Kennedy* on several previous occasions. See *State v. Williams*, 268 Kan. 1, 7, 988 P.2d 722 (1999); *State v. Muck*, 262 Kan. 459, 467, 939 P.2d 896 (1997); *State v. McClanahan*, 259 Kan. 86, 102, 910 P.2d 193 (1996); *State v. Cady*, 254 Kan. 393, 399-400, 867 P.2d 270 (1994).

In *Cady*, the defendant argued to this court that *Kennedy* should be extended to cover situations when a defendant obtains reversal of a conviction because of prosecutorial misconduct. 254 Kan. at 399. We declined to do so and remarked on the limits of the *Kennedy* rule in this way:

"*Kennedy* applies to situations where the defendant's request for mistrial was inevitable because the prosecution subverted the defendant's right to a fair trial. . . .

". . . [A] defendant should be allowed to freely choose whether he or she should request a mistrial and forego the right to have the matter decided by the first trier of fact. Where the prosecutor seeks to force the defendant into the choice, the choice is not freely made, and the prosecution has subverted the defendant's rights protected by the Double Jeopardy Clause of the Constitution." *Cady*, 254 Kan. at 399-400.

Our subsequent discussions of *Kennedy* have consistently enforced these limits. Without prosecutorial intent to provoke the defendant into moving for a mistrial, the *Kennedy* rule does not apply. See *Williams*, 268 Kan. at 7 ("Intentional prosecutorial conduct motivated by a desire to obtain a conviction but not by a desire to provoke the defendant into moving for a mistrial may be grounds for a mistrial but it does not preclude retrial of the case."); *Muck*, 262 Kan. at 470 (quoting *Kennedy*, 456 U.S. at 675-76) (" 'Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.' "); *McClanahan*, 259 Kan. at 102 ("In evaluating [misconduct], the question remains whether the prosecutor's intentional attempt to introduce inadmissible evidence substantially prejudiced the defendant's right to a fair trial and required the defendant to ask for a mistrial. . . . [I]f the defendant was forced into requesting a mistrial by the prosecutor's intentional misconduct, retrial would be barred by K.S.A. 21-3108[1][c] and by the Double Jeopardy

Clause of the Kansas and United States Constitutions"). We have yet to apply *Kennedy* to bar retrial on double jeopardy grounds, although we have remanded for a supplemental finding of fact "on the issue of whether or not the actions of the prosecutor prompting the mistrial motion were done with the intention of goading [defendant] into requesting a mistrial." *Muck*, 262 Kan. at 470 (citing *State v. Rademacher*, 433 N.W.2d 754, 757 [Iowa 1988], for a similar remand disposition).

We note that other jurisdictions also have interpreted *Kennedy* narrowly. See, *e.g.*, *United States v. Gilmore*, 454 F.3d 725, 730 (7th Cir. 2006) (prosecutor's inadvertent mistake in opening, although it necessitated mistrial, did not bar retrial under *Kennedy* exception where there was no intent to precipitate mistrial, reprosecute defendant); *United States v. Wharton*, 320 F.3d 526, 531-32 (5th Cir. 2003) (prosecution did not purposely elicit prejudicial hearsay evidence to goad defendant into seeking mistrial; thus retrial did not violate double jeopardy; evidence against defendant convincing; defendant had moved for mistrial three times before introduction of hearsay; prosecution did not stand to gain from mistrial, because witnesses from Haiti beyond district court's subpoena power); *United States v. Santos-Garcia*, 313 F.3d 1073, 1080 (8th Cir. 2002) (when defendant's motion gives rise to mistrial, reprosecution prevented only if prosecution's conduct giving rise to successful motion intended to provoke defendant); *United States v. Oseni*, 996 F.2d 186, 187-88 (7th Cir. 1993) (government cannot dismiss, reprosecute if case going badly; it cannot engage in trial misconduct intended to precipitate motion for mistrial by defendant; yet "fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial"); *Rogers v. Goord*, 371 F. Supp. 2d 348, 354 (W.D. N.Y. 2005) (mere bad faith conduct, harassment by prosecution resulting in mistrial insufficient to preclude retrial on double jeopardy ground; rather, court must determine whether prosecutor actually intended to provoke mistrial); *State v. Thomas*, 275 Ga. 167, 167-68, 562 S.E.2d 501 (2002) (where prosecutor stood to gain by aborting trial because expert's testimony favorable to defendant, record established prosecutor intended to goad defendant into

moving for mistrial; double jeopardy bars retrial); *State v. Keenan*, 81 Ohio St. 3d 133, 141, 689 N.E.2d 929 (1998) (*Kennedy* will apply to bar retrial if prosecutorial misconduct was calculated to goad defendant into seeking mistrial, but *Kennedy* not extended to bar retrial where prosecutorial misconduct basis for appellate reversal).

Defendant urges us to apply *Kennedy* here because in his view, the prosecutor committed deliberate misconduct during the first trial in order to get a new trial in which she could introduce Newhouse's previously excluded testimony. We see no support in the record for this position. There is no indication that the prosecutor intended to provoke defendant into moving for mistrial. Indeed, there was little motivation for her to do so. The testimony of the coroner already gave rise to a reasonable inference of a purposeful killing, rather than the random firing that defendant asserted. We therefore decline defendant's invitation to liberalize application of the *Kennedy* rule to fit the facts of this case. *Kennedy* requires something more than misconduct, even intentional and reversible misconduct, in order to bar retrial. It requires that the prosecutor intended to provoke a mistrial, to goad a defendant into sacrificing his or her choice to live with the outcome from the first jury. This outcome is consistent with our opinion on Morton's first appeal. We concluded then that the evidence of Morton's premeditation was not "weak," but the jury's apparent hesitation on that issue made the prosecutor's misstatement of the law significant enough to require reversal. *Morton*, 277 Kan. at 585. Yet we observed that the statement did not appear to be deliberate or the product of ill will. Furthermore, it was tempered by the prosecutor's correct definition of controlling law in her multiple references to the jury instructions. *Morton*, 277 Kan. at 585. Under these circumstances, *Kennedy* did not bar retrial on double jeopardy grounds.

*Reconsideration of Motion in Limine*

In his brief on this appeal, the defendant cites the law of the case, the mandate rule, the protection against double jeopardy, and a pretrial motion to enforce the previous limine order in support of his position on this issue. However, the district court's decision

was based solely on the doctrine of the law of the case. Generally issues not raised below may not be raised on appeal, *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006), but this court may reach a legal theory first asserted on appeal if (1) it involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; or (3) the judgment of the trial court was right for the wrong reason. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). We choose to address the merits of each of defendant's arguments on the chance that refusal to do so would endanger a fundamental right.

The law of the case doctrine has long been applied in Kansas and is generally described in the following manner:

" 'The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.' " *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998) (quoting 5 Am. Jur. 2d, Appellate Review § 605).

The doctrine was first stated by the United States Supreme Court in *Himely v. Rose*, 9 U.S. (5 Cranch) 313, 3 L. Ed. 111 (1809) (court will not revisit issues finally decided by it in previous appeal), and *Skillern's Ex'rs v. May's Ex'rs*, 10 U.S. (6 Cranch) 267, 3 L. Ed. 220 (1810) (once issues finally decided, lower court has no choice but to follow mandate). Kansas adopted the doctrine in *Headley v. Challiss*, 15 Kan. 602, 605-06 (1875); and the cases stating the rule since are "legion in number." See *Collier*, 263 Kan. at 632. Under the rule, it is clear that, when a second trial or appeal is pursued in a case, the first decision is the settled law of the case on all questions addressed in a first appeal. Reconsideration will not be given to such questions. *Waddell v. Woods*, 160 Kan. 481, Syl. ¶ 3, 163 P.2d 348 (1945).

The problem with ·applying the doctrine to prevent the district court's reconsideration of the defense motion in limine regarding Newhouse's testimony is that the issue of that testimony never arose on Morton's first appeal. In such a situation, the district court had the discretion, and perhaps even the duty, to consider the issue anew on remand.

Likewise, the mandate rule, codified in K.S.A. 60-2106(c) and stating that the Supreme Court's mandate and opinion "shall be controlling in the conduct of any further proceedings necessary in the district court," is inapplicable. See *Collier*, 263 Kan. at 635 (discussing K.S.A. 60-2106 and the "mandate rule"); *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150, Syl. ¶ 1, 1 Pac. 69 (1883). The admissibility of Newhouse's testimony was not addressed in Morton's first appeal or in the mandate to which it gave rise. Thus there was nothing to "control" the conduct of the district court on this issue.

Morton can get no farther with his argument that the State acquiesced in the district court's original ruling by failing to cross-appeal or his argument that the State should be precluded from benefitting from admission of Newhouse's testimony at a retrial necessitated by prosecutorial misconduct. The State had no duty to cross-appeal the original motion in limine ruling, and we have already fully discussed and rejected defendant's assertion of double jeopardy protection.

Having established that neither law of the case, the mandate rule, nor double jeopardy required the district judge to exclude Newhouse's testimony on retrial, we briefly address the merits of the renewed motion in limine filed by the defense. Our first inquiry is relevance. " 'Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question.' " *State v. Oliver*, 280 Kan. 681, 693, 124 P.3d 493 (2005) (quoting *State v. Carter*, 278 Kan. 74, 77, 91 P.3d 1162 [2004]). Abuse of discretion is the appropriate standard of review for a district court's ruling on such a motion. The party challenging the ruling bears the burden of showing an abuse of discretion. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d

406 (2004); *State v. Abu Fakher*, 274 Kan. 584, 594, 56 P.3d 166 (2002).

There is no doubt that Newhouse's testimony concerning the distance from the muzzle of the gun to the victim was relevant. The shorter the distance, the less likely members of the jury would accept defendant's version of what happened, *i.e.*, that he fired a shot merely to scare the victim, without looking where the gun was pointing. Moreover, the testimony was admissible under K.S.A. 60-456(b), which permits expert testimony "in the form of opinions or inferences . . . as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." Finally, the original reason the district court had excluded the testimony—to avoid the prejudice of unfair surprise—no longer applied. Under these circumstances, we conclude that there was no abuse of discretion in the district court's decision to permit the Newhouse testimony on retrial.

### Sufficiency of Premeditation Evidence

Our standard of review on sufficiency claims is often recited:

" 'When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' " *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005) (quoting *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 [2003]).

Morton raised this argument in his first appeal, and we decided it against him, determining there was "ample evidence to support premeditation." See *Morton*, 277 Kan. at 583.

" 'Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.' " *State v. Martis*, 277 Kan. 267, 301, 83 P.3d 1216 (2004) (quoting *State v. Hebert*, 277 Kan. 61, 88, 82 P.3d 470 [2004]). Several

factors may give rise to an inference of premeditation, including: (1) the nature of the weapon used, (2) the lack of provocation, (3) the defendant's conduct before and after the killing, (4) threats and declarations of the defendant before and during the occurrence, and (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *State v. Scott*, 271 Kan. 103, 109, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001). Moreover, premeditation and deliberation may be inferred from the established circumstances of a case, provided the inference is a reasonable one. *State v. Scott*, 271 Kan. at 108; see also *State v. Jones* 279 Kan. 395, 404, 109 P.3d 1158 (2005).

There was as much or more evidence of premeditation on Morton's retrial. It established that Morton decided ahead of time to rob the store. He stole a gun from his mother; he prepared an excuse for his presence at the store in the event someone asked why he was there; he parked across the street and observed the traffic in the parking lot, timing his entry so that he would be alone with the manager. After he entered the store, he left and went back to his car, where he sat for several minutes thinking through his plan and again deciding to proceed. He entered the store a second time, followed the manager to the office, took the money, and shot the store manager in the face. The jury heard that the shot was fired from 15 inches to 18 inches away from the victim. Jurors also knew Morton heard the victim fall but left the store. They knew he got in his car but returned a third time to steal or destroy security cameras and videotape. Later that evening, Morton bought drugs and played pool. Still later, he offered to pay a friend to destroy the security videotapes. He then fled the state. *Morton*, 277 Kan. at 582-83. We still have no hesitation in holding there was ample evidence to support premeditation.

Affirmed.