NOT DESIGNATED FOR PUBLICATION

No. 113,752

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANDON PISTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed September 9,
2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and
*Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  Landon Drew Pister appeals following his convictions of aggravated
battery, battery, and criminal damage to property. Pister claims:  (1) the district court
erred in denying his motions for a new trial and to set aside the jury verdicts because the
State failed to provide impeachment evidence to the defense; (2) the district court clearly
erred when it failed to instruct the jury on the lesser included offense of reckless simple
battery; (3) the district court erred when it ordered him to pay restitution in an amount
over $1,000; and (4) the district court violated his constitutional rights when it sentenced
him to an increased sentence, based upon his prior criminal history, without requiring the

1

State to prove the criminal history to a jury beyond a reasonable doubt. Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2013, Adam Mendoza, accompanied by his stepbrother, Jose Castrellon, drove his 1995 GMC Sierra pickup truck to a liquor store in Garden City, Kansas. While at the liquor store, Mendoza had a verbal confrontation with a man later identified as Pister; each man later told different versions of who initiated the contact and what happened during the encounter. Both men agreed, however, that they did not know each other prior to this incident. Mendoza and Castrellon eventually drove away in Mendoza's truck and Pister went into the liquor store. Pister was driving a white Chevy Suburban SUV and Mendoza wanted to get the license plate number, so Mendoza circled through an alley behind the liquor store and drove past the Suburban again.

As Mendoza drove away after getting Pister's license plate number, he realized that Pister was following him. Both vehicles increased their speed and eventually Pister passed Mendoza. Immediately thereafter, Pister stopped suddenly and Mendoza rear-ended him. Pister later testified that he had stopped because a Chihuahua had run out in front of his vehicle; Mendoza and Castrellon testified that they saw no reason for Pister to stop so suddenly. After the collision, Pister got out of his vehicle and walked back to Mendoza's truck and punched through the truck's driver's-side window. Pister claimed he did so because Mendoza looked injured and was trying to get out of his truck but the door would not open. Pister later stated that he was trying to help Mendoza by breaking the window. Mendoza testified that Pister punched through his driver's-side window, shattering the glass and hitting Mendoza in the face, leaving a wound that required 13 stitches and left a scar. Soon thereafter, Pister ran back to his vehicle and drove away.

2

Officer Juan Martinez of the Garden City Police Department investigated the incident. Castrellon gave Martinez the license plate number of the white Suburban and Martinez discovered the vehicle was registered to a business named D.L.D. Martinez was familiar with the business and he knew it was run by members of Pister's family.

On October 28, 2013, police obtained contact information for Pister's mother, Denise McLennan. When the police questioned McLennan about the white Suburban, she said that it was at Pister's house and he drove the vehicle. Police then found the white Suburban at Pister's residence; it was dented and showed gray paint transfer consistent with the color of Mendoza's truck. Later, Mendoza and Castrellon both separately identified Pister in photo lineups as the man who punched Mendoza's truck's window.

On January 7, 2014, the State charged Pister with three counts of aggravated battery; one count for striking Mendoza, one count for striking Castrellon, and one count for ramming Mendoza's truck with his vehicle. In May 2014, the State amended the complaint, adding one count of criminal damage of property to an extent over $1,000 but less than $25,000.

The jury trial began on January 8, 2015. The State called the police officers who investigated the case. The State also called McLennan, who briefly testified about her conversation with police about Pister's vehicle, two clerks from the liquor store, Castrellon, and Mendoza. Pister presented testimony from Stacy Smith, a registered nurse who had treated Mendoza on the night of the incident. Pister also admitted into evidence Mendoza's medical records from the hospital. Pister then testified on his own behalf.

The jury found Pister guilty of the lesser included offense of reckless aggravated battery of Mendoza; not guilty of aggravated battery of Castrellon; guilty of the lesser included offense of battery of Mendoza by ramming his truck; and guilty of the lesser included offense of criminal damage to property to the extent of less than $1,000. Pister

filed several posttrial motions: (1) a motion for a new trial, in which he argued that the State's failure to disclose McLennan's criminal history, which included crimes of dishonesty, impacted his trial strategy and warranted a new trial; (2) a motion to set aside the jury verdicts, arguing that there was insufficient evidence to support his conviction of simple battery and raising again the issue with McLennan's criminal history; and (3) a motion for a downward durational sentencing departure. The district court held a hearing and denied Pister's motions for a new trial and to set aside the jury verdicts, finding that the State's failure to disclose McLennan's criminal history did not prejudice Pister.

The district court held a sentencing hearing on February 25, 2015. At the hearing, the State presented evidence regarding restitution. Mendoza testified that prior to the collision, his truck was worth $4,500, according to the Kelly Blue Book; he had purchased it 3 years earlier for $2,000. Pister, on the other hand, presented evidence showing that the value of a truck like Mendoza's but with less mileage was $2,800. Pister also argued that restitution on the truck should be less than $1,000 since the jury had convicted him of criminal damage to property to the extent of less than $1,000.

After hearing the evidence, the district court ordered Pister to pay restitution in the amount of $2,800 for the damage to the truck. The district court denied Pister's motion for a sentencing departure and imposed a controlling sentence of 36 months' imprisonment. Pister timely appealed the district court's judgment.

FAILURE TO DISCLOSE IMPEACHMENT EVIDENCE

In his first issue, Pister argues that the district court erred by denying his motions for a new trial and to set aside the jury verdicts, which were based on the State's failure to disclose McLennan's four prior convictions of theft, a crime of dishonesty which Pister could have used to impeach her credibility at trial. Pister contends that the failure violated his constitutional rights to due process and a fair trial and impacted his defense strategy

4

to the extent that if Pister had been aware of the prior convictions, there is a reasonable probability the jury would not have convicted him. The State admits its failure to disclose the prior convictions but argues that the failure caused Pister no prejudice.

Generally, appellate courts review a district court's ruling on a motion for new trial for abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). A district court abuses its discretion when it takes action that is "(1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. [Citation omitted.]" 303 Kan. at 595-96. More specifically, Pister asserts a *Brady* violation, named for *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Our Supreme Court has explained:

> "'There are three components or essential elements of a *Brady* violation claim:
> (1) "'The evidence at issue must be favorable to the accused, either because it is
> exculpatory, or because it is impeaching' [citation omitted]"; (2) "'that evidence must
> have been suppressed by the State, either willfully or inadvertently' [citation omitted]";
> and (3) the evidence must be material so as to establish prejudice.' [Citation omitted.]"
> *Williams*, 303 Kan. at 596.

When a motion for new trial implicates *Brady*, this court reviews the holding on the existence of a *Brady* violation de novo, affords deference to the district court's findings of fact, and reviews the denial of the motion for a new trial only for abuse of discretion. 303 Kan. at 596.

Although Pister refers to the evidence of McLennan's prior theft convictions as *Brady* evidence, the evidence is better described as *Giglio* evidence, named for *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (evidence tending to

discredit a key prosecution witness is exculpatory and should be disclosed by the State). Whether the evidence is referred to as *Brady* evidence or *Giglio* evidence, the State's failure to disclose such evidence to the defense is grounds for a new trial only when the evidence is material either to guilt or to punishment. See *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154.

The district court rejected Pister's posttrial motions based on the State's failure to disclose impeachment evidence with the following explanation:

> "I don't believe that had the evidence of Ms. McLellan's [*sic*]convictions of crimes of dishonesty, if presented, would have been effective to impeach her testimony on what were pretty basic and otherwise verifiable facts, and I don't believe that had the State—or had the defense, excuse me, had that information prior to trial or prior to Miss McLellan's [*sic*] testimony, that it's likely that a different result would have been produced other than the jury's verdict in this case."

The State does not dispute that it inadvertently suppressed evidence that Pister could have used to impeach McLennan: evidence of McLennan's four prior theft convictions. Instead, the State focuses on the materiality portion of the analysis. "'"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."' [Citation omitted.]" *Williams*, 303 Kan. at 597.

At trial, McLennan, who is Pister's mother, testified that she, Pister, and her other son, Dalton, were co-owners of D.L.D., a scrap metal business. She testified that she confirmed to the police that the white Suburban they were looking for was registered to D.L.D. and they could probably find the vehicle at Pister's residence, for which she provided an address. Pister did not cross-examine McLennan at trial. McLennan's trial testimony consisted of 2 pages of the 458-page trial transcript.

6

Pister now argues that had he known of McLennan's prior convictions of crimes of dishonesty, he would have cross-examined her, attacking her credibility and reliability and suggesting that she told police that the vehicle was at Pister's house because she was "covering for herself or Dalton." Pister blames the State's failure to disclose McLennan's criminal history for his decision to testify and admit to breaking Mendoza's window; he argues that had he known about the prior theft convictions, he would have pursued a defense of mistaken identity.

Pister's argument stretches the impact of challenging McLennan's credibility beyond its reasonable limits. The only things McLennan testified about were her relationship with Pister, the existence of their company, and that she told police that the vehicle for which they were searching was registered to the company and was probably at Pister's home. None of this testimony was material to any contested issue in Pister's trial.

Moreover, Castrellon and Mendoza both separately identified Pister in photo lineups as the man who had punched Mendoza's truck's window, and both victims positively identified Pister at trial. When the police located the white Suburban, it was dented and showed gray paint transfer consistent with the color of Mendoza's truck. The testimony of Mendoza and Castrellon was corroborated at trial by the testimony of the police officers who investigated the case and the two clerks from the liquor store. It does not appear that a defense of mistaken identity would have been successful at Pister's trial.

Because Pister has not shown that the State's failure to disclose McLennan's prior theft convictions was so material that it prejudiced him, he has not shown a *Brady* or *Giglio* violation. Thus, we conclude the district court did not abuse its discretion in denying Pister's motion for a new trial or to set aside the jury verdicts based on the State's failure to disclose McLennan's criminal history.

Next, Pister contends that the district court committed reversible error when it failed to instruct the jury on the lesser included offense of reckless simple battery, as defined in K.S.A. 2015 Supp. 21-5413(a)(1). Although Pister does not explicitly identify the count for which he believes the district court should have so instructed the jury, his argument focuses on the facts surrounding Mendoza's injury sustained when Pister punched through the car window, which is Count 1.

On Count 1, the district court instructed the jury on aggravated battery by knowingly causing disfigurement to Mendoza. The district court also instructed on the lesser included offenses of: (1) "Aggravated Battery by recklessly causing disfigurement"; (2) "Aggravated Battery by knowingly causing bodily harm with a deadly weapon or in any manner wherein great bodily harm, disfigurement or death can be inflicted"; (3) "Aggravated Battery by knowingly causing physical contact in a rude, insulting, or angry manner with a deadly weapon or in any manner wherein great bodily harm, disfigurement or death can be inflicted"; (4) "Aggravated Battery by recklessly causing bodily harm with a deadly weapon or in any manner wherein great bodily harm, disfigurement or death can be inflicted"; and (5) "Battery." Additional jury instructions identified the elements of each lesser included offense. The instruction on battery required the State to prove that Pister "knowingly caused physical contact with Adam Mendoza in a rude, insulting or angry manner."

K.S.A. 2015 Supp. 21-5413(a) defines battery as: "(1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." As stated above, Pister asserts that the district court should have instructed on reckless simple battery as defined in K.S.A. 2015 Supp. 21-5413(a). He claims that such an instruction would have been legally and factually appropriate and the jury would have reached a different verdict had

8

the district court given this instruction. In response, the State argues such an instruction was not factually appropriate and that Pister's claim of prejudice is unconvincing.

> "'When reviewing the failure to give a lesser included instruction, (1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 769, 366 P.3d 232 (2016).

This court may easily dispose of the first two considerations. There are no asserted or obvious jurisdictional problems and Pister candidly admits that he did not request the instruction below, which means this court reviews for clear error. 303 Kan. at 770. Accordingly, in order to succeed, Pister "'must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" 303 Kan. at 770. Next, an instruction for reckless simple battery was legally appropriate because "as a matter of law, simple battery is a lesser included offense of severity level 4 aggravated battery," which the State charged Pister. See *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012).

Next, this court must consider whether an instruction on reckless simple battery would have been factually appropriate. A lesser included offense instruction is factually appropriate if "there was sufficient evidence to 'reasonably justify a conviction'" of the lesser included crime. See *Cooper*, 303 Kan. at 771. To support his assertion that the instruction was factually appropriate, Pister cites caselaw in which this court reversed a district court's refusal to give lesser included offense instructions which would have allowed the jury to find that the victim suffered less than great bodily harm. See *State v.*

9

*Taylor*, No. 101,224, 2011 WL 2191683 (Kan. App. 2011) (unpublished opinion). Pister contends that the failure to give his jury the option of convicting him of "recklessly causing bodily harm to another person" similarly denied his jury the right to determine whether he recklessly "caused something *less* than great bodily harm or disfigurement."

Pister's argument has merit. Considering the instructions that were given, the district court clearly felt there was sufficient evidence to support the jury's finding that Pister acted knowingly *or* recklessly and sufficient evidence to support multiple degrees of harm. In fact, the jury ultimately convicted Pister of *recklessly* causing disfigurement to Mendoza. The jury could have found that Mendoza's injury constituted bodily harm rather than disfigurement. See *Cooper*, 303 Kan. at 770 (stating that ordinarily the degree of harm suffered is a fact question for a jury). Thus, the instruction was factually appropriate. Because the instruction was factually and legally appropriate, the district court erred in failing to give it.

The error, however, does not require reversal unless this court is firmly convinced that giving the reckless simple battery instruction would have resulted in a different verdict. See *Cooper*, 303 Kan. at 770. As to the aggravated battery charge in Count 1, the district court already instructed the jury on five possible lesser included offenses. The jury convicted Pister of the lesser offense of recklessly causing disfigurement to Mendoza. Despite Pister's arguments to the contrary, the jury was given the opportunity to determine that the injury Mendoza suffered was less than disfigurement. The jury could have convicted Pister of recklessly causing bodily harm to Mendoza with a deadly weapon or in a way in which Pister could have inflicted great bodily harm, disfigurement, or death. It chose not to do so. It is highly unlikely that the jury would have convicted Pister of the still lesser offense of recklessly causing bodily harm to Mendoza.

The evidence was undisputed Pister's attack on Mendoza resulted in a wound that required stitches and left a scar on his face. This evidence clearly supports a finding by

10

the jury that Pister caused disfigurement rather than bodily harm. We are not firmly convinced that the jury would have reached a different verdict had it been instructed on simple reckless battery. Thus, the error in failing to give the instruction does not require reversal of Pister's conviction in Count 1.

RESTITUTION

Next, Pister argues that the district court erred when it ordered him to pay over $1,000 in restitution for damage to Mendoza's truck after the jury had convicted him of criminal damage to the truck in an amount less than $1,000. He contends that the restitution order violated his right to a jury trial as articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the jury had already made a factual finding that the damage to the truck was less than $1,000, so the district court's ordering him to pay over that amount in restitution necessarily involved impermissible judicial fact-finding. Pister also asserts that the restitution award was contrary to the law of the case and exceeded the damage caused by his crimes.

In response, the State points to *State v. Huff*, 50 Kan. App. 2d 1094, Syl. ¶ 5, 336 P.3d 897 (2014), *rev. denied* 302 Kan. 1015 (2015), in which this court held that *Apprendi* does not apply to restitution because restitution is not punishment. Pister acknowledges *Huff*, but contends that it was incorrectly decided. Whether a district court violated a defendant's constitutional rights as described in *Apprendi* is a question of law subject to this court's unlimited review. See *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015).

K.S.A. 2015 Supp. 21-6604(b)(1) requires a sentencing court to "order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Similarly, K.S.A. 2015 Supp. 21-

11

6607(c)(2) allows a court to order restitution "for the damage or loss caused by the defendant's crime" as a probation condition.

Although *Huff* involved restitution ordered as a condition of probation under K.S.A. 2015 Supp. 21-6607(c)(2), the fact that Pister's restitution was ordered pursuant to K.S.A. 2015 Supp. 21-6604(b)(1), which addresses restitution as part of a sentence including imprisonment, does not lessen *Huff*'s impact here. Our Supreme Court has read both statutes as mandating that "restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citation omitted.]" *State v. Dexter*, 276 Kan. 909, 912, 80 P.3d 1125 (2003). Because both are limited in this way, the *Huff* court's conclusion on *Apprendi*'s applicability holds true here as well:

> "[B]ecause restitution . . . is limited to the victim's actual loss, it lacks a punitive element and therefore is not punishment. [Citations omitted.] Because the key language in *Apprendi* refers to the requirement that any fact which increases the maximum *penalty* for a crime be proven to a jury and because restitution is not a penalty, Huff's Sixth Amendment rights were not violated when the district court made factual findings to impose a restitution requirements upon her." 50 Kan. App. 2d at 1100.

We adopt *Huff*'s reasoning that restitution is not punishment and, therefore, it does not implicate *Apprendi*. Under that reasoning, Pister's *Apprendi* argument fails.

Next, Pister argues that the law of the case doctrine prevented the district court from ordering him to pay over $1,000 in restitution because the jury had already determined that Mendoza's loss was less than $1,000, as evidenced by the jury's convicting Pister of criminal damage of property to the extent of less than $1,000. This court reviews de novo the question of whether the law of the case doctrine applies. See *State v. Edwards*, No. 109,647, 2016 WL 3659639, at *4 (Kan. 2016) (unpublished

12

opinion) (citing *Venters v. Sellers*, 293 Kan. 87, 97-100, 261 P.3d 538 [2011], as "reviewing de novo the applicability of the law-of-the-case doctrine").

> """The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower court to the decisions of appellate courts."' [Citation omitted.]" *State v. Morton*, 283 Kan. 464, 472, 153 P.3d 532 (2007).

The problem with applying the law of the case doctrine here is that the jury did not decide the amount of restitution, nor has Pister provided any persuasive authority stating that the conviction of criminal damage of property valued at less than $1,000 somehow limits the restitution award to $1,000. As stated above, K.S.A. 2015 Supp. 21-6604(b)(1) requires a causal nexus between the defendant's crime or crimes of conviction and the amount of restitution, but there is no language limiting the amount, as long as that nexus is present. Put simply, the total amount of damage caused by Pister's crimes had not been calculated, despite the jury's conviction on the criminal damage count.

Moreover, just because the State failed to prove beyond a reasonable doubt that the value of Mendoza's truck exceeded $1,000 does not mean that the district court could not order restitution in an amount over $1,000. The jury's verdict does not mean that the State proved beyond a reasonable doubt that the damage to Mendoza's truck was under $1,000. Rather, it meant that the State had not proved beyond a reasonable doubt that the damage was over $1,000. Since restitution need not be proven beyond a reasonable doubt, the district court did not err by awarding over $1,000 even in light of the jury's verdict. See *State v. Alcala*, 301 Kan. 832, Syl. ¶ 2, 348 P.3d 570 (2015) (stating the

13

amount of restitution must be supported by substantial competent evidence). The law of the case doctrine does not compel us to set aside the district court's restitution order.

Finally, we can quickly dispose of Pister's argument that the restitution order exceeded the damage caused by his crimes. Mendoza testified that his truck had been totaled during the incident with Pister, and the value of the truck before the collision was $4,500. Pister himself admitted into evidence a document describing the fair market value of a truck similar to Mendoza's as $2,800. That is the amount that the district court ordered Pister to pay in restitution for the loss of Mendoza's truck. Therefore, the amount was supported by substantial competent evidence and the district court did not abuse its discretion when it ordered Pister to pay that amount in restitution.

SENTENCE BASED ON CRIMINAL HISTORY

Finally, Pister argues that the district court violated his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution as recognized in *Apprendi*, when it sentenced him based in part on his criminal history without first requiring the State to prove the criminal history beyond a reasonable doubt to a jury. Pister concedes that the Kansas Supreme Court has previously rejected his argument. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). There is no such indication here. Therefore, the district court did not err by using Pister's criminal history to calculate his sentence.

Affirmed.

14