IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,585

STATE OF KANSAS,
*Appellee*,

v.

EDDIE LAMAR THOMAS, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Premeditated and felony murder are not separate and distinct offenses, but rather they are two theories under which the crime of first-degree murder may be committed.

2.

The substantive differences between felony murder and premeditated murder cannot trump the plain language of K.S.A. 21-3401, which provides that they are alternate theories of first-degree murder.

3.

The statutory right to a unanimous verdict only applies to the determination of guilt for the single crime charged. Unanimity is not required as to the particular means by which the crime was committed, so long as substantial evidence supports each alternative means upon which the jury is instructed.

4.

The prosecutor has the authority and discretion to choose the evidence to present to the jury in support of the charged crime, but the prosecutor cannot elect the law that will be applied to those facts. The trial judge has the sole authority and responsibility to instruct the jury on the elements of the crime that the State must prove beyond a reasonable doubt to obtain a conviction.

5.

If an affidavit submitted in support of a search warrant contains both lawfully and unlawfully obtained information, the question becomes whether the lawfully obtained information, standing alone, would have supported the requisite probable cause to justify the issuance of the search warrant.

6.

When reviewing a magistrate's finding of probable cause to support the issuance of a search warrant, the standard is whether the evidence provided the magistrate with a substantial basis for concluding that probable cause existed, *i.e.*, whether there was a fair probability that evidence will be found in the place to be searched.

Appeal from Johnson District Court; KEVIN P. MORIARTY and THOMAS H. BORNHOLDT, judges. Opinion filed July 24, 2015. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, senior deputy district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Eddie Thomas, Jr. shot and killed Christopher Dotson after agreeing to have sex with Dotson in exchange for money. The State charged Thomas with one count of aggravated robbery and one count of first-degree murder under the alternative theories of premeditation and felony murder. The jury convicted Thomas of aggravated robbery and first-degree murder, even though it could not reach a unanimous decision as to whether the murder was premeditated or committed during the course of the aggravated robbery.

Thomas filed a direct appeal, raising three issues: (1) The district court erred by instructing the jury that it could convict Thomas of first-degree murder based on the combined theories of premeditated and felony murder because the two theories should be considered separate and distinct crimes; (2) the prosecutor's closing argument election to rely solely on a felony-murder theory legally nullified Thomas' first-degree murder conviction because that conviction was based, in part, on a theory of premeditation; and (3) the district court erred in refusing to suppress items seized pursuant to a search warrant obtained with statements made by Thomas in violation of his *Miranda* rights. Because neither the facts nor caselaw support Thomas' arguments, we affirm his convictions.

FACTUAL AND PROCEDURAL OVERVIEW

On August 25, 2010, Dotson's body was found in his apartment. An autopsy revealed that he died from a single gunshot wound to the head. A .40 caliber bullet was recovered during a subsequent police search of Dotson's apartment, but the casing was never located. In addition, a blue plastic cup was collected and submitted for fingerprint analysis. Dotson's wallet and cell phone were missing from his apartment.

3

Dotson's cell phone records revealed over 100 text messages and phone calls to Thomas' cell phone on August 22, 2010, with the last phone call at 10:08 p.m. No calls or text messages were sent from Dotson's phone after that time. Consequently, police attempted to locate Thomas in order to question him about his August 22, 2010, communications with Dotson.

On August 27, 2010, Thomas voluntarily appeared at the Shawnee Police Department for an interview with Detectives Rasnic and Hohnholt. Thomas admitted that he had recently reconnected with Dotson through Facebook but said that he had not seen Dotson since 2009. Thomas said that he last communicated with Dotson by text message on Sunday, August 22, 2010, but downplayed the extent and content of their communications on that day.

Rasnic confronted Thomas with Dotson's cell phone records and warned Thomas that law enforcement officers would soon know the content of the text messages. Thereafter, Thomas admitted that Dotson had texted him throughout the day on August 22 and requested sex in exchange for money. Thomas said that he initially refused Dotson's propositions; but when Dotson persisted, Thomas began to "mess" with him by seeing how much money Dotson was willing to pay. Thomas eventually admitted that he went to Dotson's apartment on the evening of August 22, 2010, and watched television for a little bit but then told Dotson he was not going to do anything and left. However, after further pressing by the detectives, Thomas finally confessed that while at the apartment, he shot Dotson with a .40 caliber Ruger pistol and took Dotson's wallet.

After the interview, law enforcement officers applied for a warrant to search the residence of Thomas' girlfriend, Shana Williams. The affidavit submitted in support of the search warrant included Thomas' admissions that (1) he owned a .40 caliber Ruger

4

pistol; (2) he took the pistol with him to Dotson's apartment; and (3) he shot Dotson in the face.

During the search of Williams' residence, police seized a white t-shirt and denim shorts that appeared to have small drops of blood on them. The search also revealed a receipt signed by Thomas itemizing the purchase of a Ruger P94 pistol and .40 caliber Smith and Wesson ammunition. Police were unable to locate the pistol or ammunition.

Thomas was first charged with first-degree murder and aggravated robbery in Johnson County District Court case number 10CR2098. However, after his arraignment, Thomas filed a motion to suppress statements he made during his interview, claiming a *Miranda* violation. The district court granted Thomas' motion and issued an order suppressing portions of Thomas' interview, including his confessions that he owned a pistol, shot Dotson, and took Dotson's wallet. The district court later dismissed the criminal charges because Thomas' confessions were the only evidence presented at the preliminary hearing to support the finding of probable cause for the filed charges.

The State refiled charges against Thomas for first-degree murder under alternative theories of premeditation and felony murder, and for aggravated robbery. Following another preliminary hearing, the district court found that probable cause existed to bind Thomas over for trial. The district court also incorporated its order from Thomas' original criminal case, which had suppressed Thomas' un-*Mirandized* confessions. Thomas thereafter filed a motion seeking to suppress the physical items seized when the police executed the search warrant which had been issued upon an affidavit containing Thomas' unlawfully obtained incriminating statements. The district court denied the motion.

During the trial, evidence was admitted indicating that (1) on the evening of August 22, 2010, Thomas was wearing jean shorts and a white t-shirt and carried a

5

handgun in his backpack; (2) Thomas' fingerprints matched those found on a blue plastic cup within Dotson's apartment; (3) the bullet recovered from Dotson's body could have been fired from a Ruger P94; (4) Thomas owned a Ruger P94; (5) Dotson's DNA was found in the presumptive blood stains located on the white t-shirt collected from Williams' apartment; (6) Thomas' DNA was located on the interior of the white t-shirt containing Dotson's DNA; (7) Dotson's DNA was located in the stain on the jean shorts collected from Williams' apartment; and (8) Thomas' DNA was located on the inside of the jean shorts containing Dotson's DNA. Thomas' redacted interview with police, in which he admitted to going to Dotson's apartment on August 22, 2010, was also admitted at trial. The State also admitted a copy of a recorded telephone call from jail wherein Thomas was asked why he did not call the police and Thomas responded: "'Because it happened so fast. Yeah. It all happened so fast.'"

The jury found Thomas guilty of aggravated robbery and first-degree murder. The verdict form indicated that the jury was unable to reach a unanimous verdict on either a theory of felony murder or a theory of premeditated murder, but the jury was unanimous in finding Thomas guilty of first-degree murder. Thomas filed a timely notice of appeal.

FIRST-DEGREE MURDER JURY INSTRUCTIONS

For the first time on appeal, Thomas claims that the district court erred in instructing the jury that it could convict him of first-degree murder based on a combined theory of felony and premeditated murder. While Thomas acknowledges that the instruction was proper under current law, he argues that statutory changes indicate that felony murder and premeditated murder are separate and distinct crimes and should no longer be viewed as alternative means of committing first-degree murder. Because Thomas' argument is foreclosed by the first-degree murder statute's plain language and by longstanding precedent, we hold that the district court did not err.

6

*Standard of Review*

In order to circumvent a preservation problem, *i.e.*, Thomas' failure to challenge the bona fides of the first-degree murder statute at the trial court level, Thomas frames this issue as a jury instruction error. Notwithstanding this misdirection, our analysis of jury instruction issues involves a determination of whether the instruction was legally appropriate, and, accordingly, we can proceed down the path requested by Thomas.

> "For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

If, after the first step, an appellate court determines that the issue has not been properly preserved, relief may still be granted if the giving or failure to give an instruction was clearly erroneous. K.S.A. 22-3414(3). Thomas did not object to the instructions or verdict form below, therefore relief may only be granted if the instruction was clearly erroneous. See K.S.A. 22-3414(3).

> "To determine whether an instruction or a failure to give an instruction was clearly erroneous, the reviewing court must first determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject

7

instruction was legally and factually appropriate, employing an unlimited review of the entire record.

"If the reviewing court determines that the district court erred in giving or failing to give a challenged instruction, then the clearly erroneous analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

*Analysis*

The jury was instructed that Thomas was charged with one count of first-degree murder, which could be established by proving, beyond a reasonable doubt, that Thomas killed Dotson and the killing was done while in the commission of an aggravated robbery or, in the alternative, that Thomas killed Dotson intentionally and with premeditation. The instruction further provided that if the jury did not have a reasonable doubt that the State had proven murder in the first degree "on either or both theories," it must enter a verdict of guilty. The instructions also provided that if the jury found Thomas guilty of murder in the first degree, the presiding juror should sign the applicable verdict form and indicate which of the three alternative theories that the jury found applicable. Theory 1(a) stated: "We, the jury, unanimously find the defendant guilty of murder in the first degree on the theory of premeditated murder." Theory 1(b) stated: "We, the jury, unanimously find the defendant guilty of murder in the first degree on the theory of felony murder." Theory 1(c), which is at issue in this appeal, stated: "We, the jury, unable to agree under Theory 1(a) or 1(b), do unanimously find the defendant guilty of murder in the first degree on the combined theories of premeditated murder and felony murder." Thomas argues these instructions are clearly erroneous because felony and premeditated murder are, in fact, two separate crimes.

8

K.S.A. 21-3401 defines first-degree murder as "the killing of a human being committed:  (a) Intentionally and with premeditation; *or* (b) in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto." (Emphasis added.) In interpreting the plain language of K.S.A. 21-3401, we have long held that the "statute merely provides alternative methods of proving the deliberation and premeditation required for a conviction of first degree murder." *State v. McCowan*, 226 Kan. 752, 759, 602 P.2d 1363 (1979), *cert. denied* 449 U.S. 844 (1980). See also *State v. Dominguez*, 299 Kan. 567, 576, 328 P.3d 1094 (2014) (citing to PIK Crim. 3d 56.02, Comment, noting that K.S.A. 21-3401 merely provides alternative methods of proving first-degree murder); *State v. Hoge*, 276 Kan. 801, 810, 80 P.3d 52 (2003) (premeditated and felony murder are not two distinct crimes but merely provide alternative methods of committing first-degree murder); *State v. Davis*, 247 Kan. 566, 571, 802 P.2d 541 (1990) ("K.S.A. 21-3401 establishes the single offense of murder in the first degree and alternative methods of proving that crime.").

Our present circumstances were specifically addressed in *State v. Morton*, 277 Kan. 575, 578, 86 P.3d 535 (2004), where the defendant was convicted of first-degree murder based on a verdict form stating the jurors "were 'unable to agree whether the defendant is guilty of Murder in the First Degree on the theory of premeditated murder or felony murder.'" But like here, the jury "'unanimously [found] the defendant guilty of murder in the first degree on the combined theories of premeditated murder and felony murder.'" 277 Kan. at 578. On appeal, Morton raised the same argument proffered by Thomas—that premeditated murder and felony murder are separate and distinct offenses and his right to a unanimous verdict was therefore violated by the erroneous instruction and verdict forms. We rejected Morton's argument, first noting the long line of cases holding that premeditated and felony murder are not separate and distinct crimes but are

9

two different theories for establishing first-degree murder. 277 Kan. at 579. We then concluded:

> "Although we know from the verdict form that Morton's jury could not agree on premeditation or felony murder, it was unanimous as to his guilt of first-degree murder. That was enough as long as the evidence of each means was sufficient. Instruction and conviction on the combined theories was proper." 277 Kan. at 581.

See also *State v. Pioletti*, 246 Kan. 49, 64, 785 P.2d 963 (1990) (when defendant charged with both premeditated murder and felony murder, it does not matter if some members of jury arrive at verdict of guilt based on proof of premeditation while others arrive at verdict of guilt based on felony murder).

Thomas acknowledges this court's holdings and the plain language of K.S.A. 21-3401 but nonetheless argues that certain statutory changes indicate that the legislature actually intended to treat felony and premeditated murder as two separate crimes. He points to the following evidence of that legislative intent: (1) The minimum mandatory sentence for premeditated murder is higher than that required for felony murder; (2) premeditated murder contains lesser included offenses while felony murder does not; and (3) one can attempt premeditated murder, but one cannot attempt felony murder.

Although these substantive differences between felony murder and premeditated murder certainly suggest that they are separate crimes, any inference to be drawn from these differences cannot trump the plain language of the statute. For instance, the statute eliminating lesser included offenses for felony murder clearly states that felony murder and premeditated murder do not constitute separate crimes, to-wit: "Murder in the first degree as defined in subsection (a)(2) [felony murder] is an alternative method of proving murder in the first degree *and is not a separate crime* from murder in the first degree as

10

defined in subsection (a)(1) [premeditated murder]." (Emphasis added.) K.S.A. 2014 Supp. 21-5402(d). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013). Here, there is no need to speculate—the legislative intent is crystal clear—felony murder and premeditated murder are not separate crimes, despite their substantive differences.

Faced with unambiguous statutes, clear legislative intent, and a long history of caselaw holding that the two crimes are alternative means, Thomas asks this court to overturn K.S.A. 21-3401 based on a defendant's statutory right to a unanimous verdict, as provided for in K.S.A. 22-3421 and K.S.A. 22-3423(1)(d). In Kansas, a criminal defendant has a statutory right to a unanimous jury verdict. *State v. Voyles*, 284 Kan. 239, 250, 160 P.3d 794 (2007). Thomas argues that the first-degree murder statute, which allows him to be convicted of first-degree murder even if a jury does not unanimously agree on whether it was premeditated or committed in the commission of an inherently dangerous felony, violates his statutory right to a unanimous verdict. However, the statutory right to a unanimous verdict only applies to the "'guilt for the single crime charged. Unanimity is not required . . . as to the means by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.]'" *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]). Here, the verdict form clearly indicated that the jury was unanimous on the single crime charged—first-degree murder. Moreover, Thomas does not allege, nor does the record indicate, that there was insufficient evidence to support both premeditation and felony murder. Therefore, Thomas' statutory right to a unanimous verdict was not violated.

Thomas also argues that because felony murder only requires foreseeability and not premeditation, its *mens rea* requirement is more akin to that of reckless second-

degree murder, which is defined as the killing of a human being committed "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-3402(b). This argument suffers from the same fatal flaw discussed above—the plain language of the first-degree murder statute. In other words, even should this court agree with Thomas' reasoning, we have no authority to rewrite an unambiguous statute. See *State v. Limon*, 280 Kan. 275, 304, 122 P.3d 22 (2005) (it is a violation of separation of powers doctrine for court to rewrite statute in manner clearly contrary to legislative intent).

Thomas does not argue that the instructions were not factually appropriate, nor does he argue that there was insufficient evidence to support both alternative means of premeditation or felony murder. He therefore implicitly concedes that the alternative theory instruction was factually appropriate. See *Dominguez*, 299 Kan. at 575 ("In response, by not arguing to the contrary, the State implicitly concedes that the alternative theory instructions and verdict form formulated by the PIK Committee were legally and factually appropriate.").

We therefore hold, based on the plain language of the first-degree murder statute, this court's precedent, and the evidence, that the instructions and verdict form provided herein were legally and factually appropriate, and the district court did not err in giving the jury instructions. Accordingly, without error, the instructions could not be clearly erroneous.

FUNCTIONAL ELECTION OF ALTERNATIVE MEANS

Thomas suggests that, even if felony murder and premeditated murder are alternative means, his conviction cannot stand because, during closing argument, the prosecutor elected to proceed solely upon a felony-murder theory. He argues that the

prosecutor's election foreclosed the jury's reliance on a combined theory, as a matter of law. We need not quibble over whether the prosecutor's closing argument did purport to effect an election, because a prosecutor cannot elect the law that a jury must apply to the facts of a case.

*Standard of Review*

Thomas argues the issue involves instructional error because the district court should not have, as a matter of law, instructed the jury on the theory of premeditated murder once the prosecutor "elected" to proceed on a theory of felony murder during closing argument. Thomas' argument is without merit because the jury was instructed prior to the State's closing argument, and a district court is required to provide instructions on the crimes charged. See K.S.A. 22-3414(4).

Rather, Thomas' issue is more akin to a question of law, *i.e.*, whether a prosecutor can "functionally elect" an alternative means and thereby foreclose the jury from basing its verdict, in any part, on the "unelected" theory. A question of law is subject to unlimited review. See *State v. Moody*, 282 Kan. 181, 188, 144 P.3d 612 (2006).

*Analysis*

We recently addressed whether a prosecutor could functionally elect an alternative means during closing argument. In *State v. Owen*, No. 102,814, 2015 WL 1309978 (Kan. 2015) (unpublished opinion), the State had failed to present sufficient evidence of one of the alternative means upon which the jury had been instructed. The State sought to cure that deficiency by arguing that although the "elect or instruct" requirement has previously only been applied to multiple acts cases, it should also apply to alternative means cases. The *Owen* court rejected this argument.

13

"Notwithstanding the State's understanding of this distinction, it attempts to insert the proverbial square peg in a round hole, by making the simplistic argument: 'If election or its functional equivalent is sufficient to secure jury unanimity in a multiple acts setting, logically then, a similar election should be sufficient to provide unanimity in an alternative means scenario.' The fallacy of that premise is rooted in the allocation of responsibilities in a jury trial. The prosecutor has the authority and discretion to draft and file a charging document and can choose the evidence that the State will present to the jury. Accordingly, it is within the prosecutor's province to elect the evidence that the State wishes the jury to consider in determining the defendant's guilt on a particular count. Although the trial judge can tell a jury that the law mandates that it be unanimous on the particular evidence that will support the single count, it cannot tell the jury *which specific evidence* it must consider. In sum, it is the prosecutor that elects the evidence for the jury.

"But on the flip side, the prosecutor cannot elect which law it wants the jury to apply to a particular case; it is solely the trial judge's authority and responsibility to instruct the jury on the elements of the crime that must be proved beyond a reasonable doubt to effect a conviction. If the judge instructs the jury that the elements of the crime include that the defendant endorsed a check, the prosecutor is not imbued with the authority to countermand that instruction and say that it is acceptable to convict the defendant without evidence of that instructed element. In short, although a prosecutor can elect *the facts* that the jury should unanimously consider, he or she cannot elect the *law* that the jury should unanimously apply." 2015 WL 1309978, at *7.

In keeping with the rationale of *Owen*, we similarly conclude that during closing argument, a prosecutor cannot, as a matter of law, functionally elect to have the jury ignore a legal theory which the court has instructed the jury that it may use to convict the defendant on the charged crime. Therefore, the jury was not precluded from convicting Thomas of first-degree murder based on both alternative means of felony and premeditated murder.

14

Thomas claims the district court erred in denying his motion to suppress items seized during a search conducted pursuant to an invalid search warrant. He argues that the Fifth Amendment to the United States Constitution prohibits the use of his un-*Mirandized* statements in the affidavit submitted in support of the application for the search warrant. He further contends that without the un-*Mirandized* statements, the affidavit did not support a finding of probable cause for issuance of the search warrant. Because we hold that the affidavit contained sufficient evidence to support a finding of probable cause, even without the un-*Mirandized* statements, we need not determine whether the Fifth Amendment prohibits the use of an un-*Mirandized* statement in an affidavit submitted in support of a search warrant. In other words, if there was any error, it was harmless.

*Standard of Review*

Typically, when an affidavit in support of an application for a search warrant is challenged, this court uses a deferential standard of review for determining whether the issuing magistrate had a substantial basis for concluding probable cause existed. *State v. Adams*, 294 Kan. 171, 180, 273 P.3d 718 (2012). Thomas does not challenge whether the affidavit contained sufficient information to constitute probable cause. Instead, he challenges the legality of using statements obtained in violation of the *Miranda* rule to secure a search warrant. This issue is a question of law subject to de novo review. See *State v. Althaus*, 49 Kan. App. 2d 210, 217, 305 P.3d 716 (2013) (assessing legal effect of affidavit in support of search warrant typically presents question of law over which appellate courts exercise unlimited review).

*Analysis*

The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to remain silent and the right to have a lawyer present during a custodial interrogation. See *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003) (citing *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966]). In *Miranda*, the United States Supreme Court held that statements obtained from defendants during a custodial police interrogation, without a full warning of constitutional rights, were inadmissible as having been obtained in violation of the Fifth Amendment's privilege against self-incrimination. 384 U.S. at 444.

The district court determined that Thomas' police interview turned into a custodial interrogation about an hour and a half after it began, and therefore the court suppressed all statements made after that time because police had failed to advise Thomas of his *Miranda* warnings. Several of these suppressed statements were included in the affidavit submitted in support of the request for a search warrant, *e.g.*, Thomas' statements that he owned a .40 Ruger pistol, shot Dotson with the pistol, and took Dotson's wallet, leading to Thomas' claim that the warrant was invalid. But, relying on *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004), and *United States v. Phillips*, 468 F.3d 1264 (10th Cir. 2006), the district court denied the motion, finding that Thomas' un-*Mirandized* statements could be included in an affidavit submitted in support of a search warrant.

*Patane* held that nontestimonial evidence obtained with a warrant affidavit containing un-*Mirandized* statements only violates the Fifth Amendment if the evidence obtained is the fruit of an actually coerced statement. 542 U.S. at 644. *Phillips*, citing to *Patane*, held that "physical evidence that is the fruit of a voluntary statement should not

16

be suppressed even if the statement was elicited without a *Miranda* warning." 468 F.3d at 1266.

But we need not decide the impact of *Patane* on this case. "'Assuming the application and affidavit for the search warrant contained information both lawfully and unlawfully obtained, the question remains whether the lawfully obtained information by itself supports probable cause that would have justified issuance of the search warrant by the magistrate.'" *State v. Fisher*, 283 Kan. 272, 301, 154 P.3d 455 (2007) (quoting *State v. Weas*, 26 Kan. App. 2d 598, 603, 992 P.2d 221 [1999], *rev. denied* 268 Kan. 855 [2000]). In other words, if the lawfully obtained information is sufficient, standing alone, to support the requisite probable cause to issue a warrant, the existence of any unlawfully obtained information will not invalidate the warrant.

In determining whether probable cause exists to support a search warrant, the issuing magistrate's duty is to make a practical, commonsense decision whether, given the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Powell*, 299 Kan. 690, 695, 325 P.3d 1162 (2014). When reviewing the issuing judge's decision to issue a warrant, this court conducts "an independent analysis of the content of the affidavit, but we need only see enough to persuade us that there was a substantial basis for the magistrate's conclusion." *State v. Hicks*, 282 Kan. 599, 613, 147 P.3d 1076 (2006).

The affidavit stated the following lawfully obtained information: Dotson was found dead in his apartment on August 25, 2010; he died from a single gunshot wound to the head; he was last seen around 8:30 p.m. on August 22, 2010; his cell phone revealed multiple communications between himself and Thomas on the evening of August 22, 2010; during the course of their August 22nd communications, Dotson offered to pay Thomas $500 in exchange for sex; Dotson withdrew $500 from his ATM on the evening

17

of August 22, 2010; and Thomas admitted to going to Dotson's apartment on the evening of August 22, 2010. Accordingly, we conclude that the affidavit contained sufficient evidence of motive and opportunity to commit the crime and therefore supported a finding of probable cause apart from Thomas' un-*Mirandized* confessions. See *Fisher*, 283 Kan. at 300 (When reviewing a magistrate's finding of probable cause, the standard is whether the evidence provided the magistrate with a substantial basis for concluding that probable cause existed; it does not demand that the reviewing court determine whether, as a matter of law, probable cause existed, but rather there was a fair probability that evidence will be found in the place to be searched.). We therefore affirm the district court's denial of the motion to suppress.

Affirmed.