NOT DESIGNATED FOR PUBLICATION

No. 122,885

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDDIE LAMAR THOMAS SR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed June 18, 2021. Affirmed.

*Brittany E. Lagemann*, of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., BUSER and CLINE, JJ.

CLINE, J:  Eddie Lamar Thomas Sr. appeals the district court's summary dismissal of his K.S.A. 60-1507 motion, in which he alleged several ineffective assistance of trial counsel claims. Since the motion, files, and records of this case conclusively establish Thomas has no right to relief, we affirm.

FACTS

The facts here can be found in Thomas' direct appeal before the Kansas Supreme Court:

"On August 25, 2010, [Christopher] Dotson's body was found in his apartment. An autopsy revealed that he died from a single gunshot wound to the head. A .40 caliber bullet was recovered during a subsequent police search of Dotson's apartment, but the casing was never located. In addition, a blue plastic cup was collected and submitted for fingerprint analysis. Dotson's wallet and cell phone were missing from his apartment.

"Dotson's cell phone records revealed over 100 text messages and phone calls to [Eddie] Thomas' cell phone on August 22, 2010, with the last phone call at 10:08 p.m. No calls or text messages were sent from Dotson's phone after that time. Consequently, police attempted to locate Thomas in order to question him about his August 22, 2010, communications with Dotson.

"On August 27, 2010, Thomas voluntarily appeared at the Shawnee Police Department for an interview with Detectives Rasnic and Hohnholt. Thomas admitted that he had recently reconnected with Dotson through Facebook but said that he had not seen Dotson since 2009. Thomas said that he last communicated with Dotson by text message on Sunday, August 22, 2010, but downplayed the extent and content of their communications on that day.

"Rasnic confronted Thomas with Dotson's cell phone records and warned Thomas that law enforcement officers would soon know the content of the text messages. Thereafter, Thomas admitted that Dotson had texted him throughout the day on August 22 and requested sex in exchange for money. Thomas said that he initially refused Dotson's propositions; but when Dotson persisted, Thomas began to 'mess' with him by seeing how much money Dotson was willing to pay. Thomas eventually admitted that he went to Dotson's apartment on the evening of August 22, 2010, and watched television for a little bit but then told Dotson he was not going to do anything and left. However, after further pressing by the detectives, Thomas finally confessed that while at the apartment, he shot Dotson with a .40 caliber Ruger pistol and took Dotson's wallet.

"After the interview, law enforcement officers applied for a warrant to search the residence of Thomas' girlfriend, Shana Williams. The affidavit submitted in support of

the search warrant included Thomas' admissions that (1) he owned a .40 caliber Ruger pistol; (2) he took the pistol with him to Dotson's apartment; and (3) he shot Dotson in the face.

"During the search of Williams' residence, police seized a white t-shirt and denim shorts that appeared to have small drops of blood on them. The search also revealed a receipt signed by Thomas itemizing the purchase of a Ruger P94 pistol and .40 caliber Smith and Wesson ammunition. Police were unable to locate the pistol or ammunition.

"Thomas was first charged with first-degree murder and aggravated robbery in Johnson County District Court case number 10CR2098. However, after his arraignment, Thomas filed a motion to suppress statements he made during his interview, claiming a *Miranda* violation. [See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).] The district court granted Thomas' motion and issued an order suppressing portions of Thomas' interview, including his confessions that he owned a pistol, shot Dotson, and took Dotson's wallet. The district court later dismissed the criminal charges because Thomas' confessions were the only evidence presented at the preliminary hearing to support the finding of probable cause for the filed charges.

"The State refiled charges against Thomas for first-degree murder under alternative theories of premeditation and felony murder, and for aggravated robbery. Following another preliminary hearing, the district court found that probable cause existed to bind Thomas over for trial. The district court also incorporated its order from Thomas' original criminal case, which had suppressed Thomas' un-*Mirandized* confessions. Thomas thereafter filed a motion seeking to suppress the physical items seized when the police executed the search warrant which had been issued upon an affidavit containing Thomas' unlawfully obtained incriminating statements. The district court denied the motion.

"During the trial, evidence was admitted indicating that (1) on the evening of August 22, 2010, Thomas was wearing jean shorts and a white t-shirt and carried a handgun in his backpack; (2) Thomas' fingerprints matched those found on a blue plastic cup within Dotson's apartment; (3) the bullet recovered from Dotson's body could have been fired from a Ruger P94; (4) Thomas owned a Ruger P94; (5) Dotson's DNA was found in the presumptive blood stains located on the white t-shirt collected from Williams' apartment; (6) Thomas' DNA was located on the interior of the white t-shirt containing Dotson's DNA; (7) Dotson's DNA was located in the stain on the jean shorts collected from Williams' apartment; and (8) Thomas' DNA was located on the inside of

3

the jean shorts containing Dotson's DNA. Thomas' redacted interview with police, in which he admitted to going to Dotson's apartment on August 22, 2010, was also admitted at trial. The State also admitted a copy of a recorded telephone call from jail wherein Thomas was asked why he did not call the police and Thomas responded: 'Because it happened so fast. Yeah. It all happened so fast.'

"The jury found Thomas guilty of aggravated robbery and first-degree murder. The verdict form indicated that the jury was unable to reach a unanimous verdict on either a theory of felony murder or a theory of premeditated murder, but the jury was unanimous in finding Thomas guilty of first-degree murder. Thomas filed a timely notice of appeal." *State v. Thomas*, 302 Kan. 440, 441-44, 353 P.3d 1134 (2015).

After the Supreme Court affirmed Thomas' convictions, he filed a pro se K.S.A. 60-1507 motion, asserting several claims of ineffective assistance of trial counsel. The district court summarily denied Thomas' K.S.A. 60-1507 motion in a thoughtful and well-reasoned order. On appeal, Thomas addresses none of the district court's reasons for denying his motion. Instead, he simply argues he was entitled to an evidentiary hearing because he "alleges facts and conclusions which are not readily available in the record." Thomas does not specify which facts or conclusions were not readily apparent from the record or which require exploration at an evidentiary hearing. We find no fault in the district court's rationale for denying Thomas' motion.

ANALYSIS

An evidentiary hearing on a K.S.A. 60-1507 motion is not required if the motion, files, and records of the case conclusively show the movant has no right to relief. K.S.A. 2020 Supp. 60-1507(b). The burden is on the movant to allege facts sufficient to warrant a hearing on the motion. *Doolin v. State*, 24 Kan. App. 2d 500, 501, 947 P.2d 454 (1997) (citing *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 [1994]). To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011). If the motion

4

presents no substantial issues of fact, the district court is not required to appoint counsel or hold a hearing. *Doolin*, 24 Kan. App. 2d at 501 (citing *Rhone v. State*, 211 Kan. 206, 208, 505 P.2d 673 [1973]).

When a district court summarily dismisses a K.S.A. 60-1507 motion, like it did here, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant has no right to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

Since Thomas alleges ineffective assistance of counsel, his motion falls under K.S.A. 60-1507(b), which mandates relief when a prisoner establishes, by a preponderance of the evidence, that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2020 Supp. 60-1507(b); see Supreme Court Rule 183(g) (2021 Kan. S. Ct. R. 239). The Sixth Amendment to the United States Constitution guarantees an accused the right to have assistance of counsel for his or her defense. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The Fourteenth Amendment to the United States Constitution applies this right to state proceedings. The guarantee includes not only the presence of counsel but counsel's effective assistance as well. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

The Kansas Supreme Court recently recounted the two-prong test for analyzing ineffective assistance of counsel claims in *Khalil-Alsalaami v. State*, 313 Kan. __, __ P.3d __, 2021 WL 1945151 (2021):

> "'*Strickland* established a two-prong test for determining if a criminal defendant's Sixth Amendment right to effective assistance of counsel has been violated by an attorney's performance. 466 U.S. at 687-96. Kansas

courts adopted this test in *Chamberlain* [*v. State*], 236 Kan. [650,] 656-57[, 694 P.2d 468 (1985)]. Under the first prong, a defendant must demonstrate that counsel's performance was deficient. 236 Kan. at 656. If so, the court moves to the second prong and determines whether there is a reasonable probability that, without counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694.' *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015).

"To establish deficient performance under the first prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland*, 466 U.S. at 688. Courts must remain mindful that their scrutiny of an attorney's past performance is highly deferential and viewed contextually, free from the distorting effects of hindsight:

"'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citations omitted.]' 466 U.S. at 689.

"Under *Strickland*'s second prong, defendants must show the deficient performance of counsel was prejudicial. To do so, defendant must establish with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). '"A reasonable probability is a probability sufficient to undermine

6

confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" 294 Kan. at 838." 2021 WL 1945151, at *9.

We will apply this test to each of Thomas' claims in turn.

*1. Thomas' counsel was not deficient for failing to argue a mistaken theory of felony murder.*

A jury convicted Thomas of aggravated robbery, in violation of K.S.A. 21-3427, and first-degree murder, in violation of K.S.A. 21-3401. Under K.S.A. 21-3401, first-degree murder is the killing of a human being either "intentionally and with premeditation" or "in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto." Aggravated robbery is considered an inherently dangerous felony when applying the felony murder rule. K.S.A. 21-3436(a)(4).

The jury instructions allowed the jury to convict Thomas of first-degree murder under either alternative means set forth in the statute—felony murder or killing intentionally and with premeditation. The instruction also provided that if the jury did not have a reasonable doubt that the State had proven murder in the first degree "'on either or both theories,'" it must enter a verdict of guilty. *Thomas*, 302 Kan. at 445-46. The Supreme Court upheld these instructions on appeal. 302 Kan. at 445-46.

Thomas first argues his trial counsel was ineffective for failing to argue he stole the victim's personal property after the victim's death. Yet, as the district court explained, Thomas is mistaken in his assertion that, to qualify as felony murder, the murder had to have resulted from the victim being robbed or resisting a robbery:

7

"The test for determining application of the felony-murder rule is stated in *State v. Cameron*, 300 Kan. 384, 396-97, 329 [P.3d] 1158 (2014):

'In order to establish felony murder, the State must prove two causation elements. First, the death must lie within the res gestae of the underlying crime, which is defined in this context as acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence. Second, the felony and the homicide must have a direct causal connection, which exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.'

"When applying the felony murder rule, the felony and the victim's death do not need to occur simultaneously, nor does the felony need to occur before the death. Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and therefor[e] subject to the felony murder rule. *State v. Jacques*, 270 Kan. 173, 14 P.3d 409 (2000).

"In this case, if Thomas' trial counsel had argued that the aggravated robbery took place after Thomas murdered the victim, a jury could still convict Thomas of felony-murder. The death occurred shortly before Thomas stole the victim's property, and thus, became 'so closely connected with' the aggravated robbery. A direct causal connection is also present. The time element is met because evidence presented at trial indicated that the events happened quickly. The State admitted a copy of a recorded telephone call from jail wherein Thomas was asked why he did not call the police. Thomas responded: 'Because it happened so fast. Yeah. It all happened so fast.' The distance factor is satisfied because the murder and aggravated robbery happened in the same apartment."

Thomas does not challenge the district court's reasoning on appeal, nor does he point to any facts or conclusions which require exploration at an evidentiary hearing. Like the district court, we do not find that Thomas' counsel was deficient in failing to argue a mistaken theory of felony murder, nor do we find there is a reasonable probability that, if counsel had argued these facts, the result would have been different.

8

*2. Thomas' trial counsel did not fail to exclude "previously dismissed evidence."*

Thomas' second claim, that his counsel failed to exclude "previously dismissed evidence" from his second criminal case, has no basis in the record. As noted above, in Thomas' original case, his counsel successfully suppressed the admission of incriminating statements from Thomas' interrogation, leading to the dismissal of the criminal charges. After the State refiled the criminal charges, his counsel filed another motion to suppress these statements for *Miranda* violations, which the district court granted. The district court correctly dismissed this ineffective assistance of counsel claim.

*3. Thomas' trial counsel was not deficient in failing to challenge the refiled charges or the evidence used to support probable cause in re-filing the charges.*

Thomas mistakenly argues his counsel failed to challenge the evidence used to support probable cause in the refiling of the criminal charges against him. His counsel did challenge the use of the incriminating statements to support probable cause in the motion to suppress items seized in execution of the search warrant. Further, while he generically claims his attorney should have challenged the State's refiling of criminal charges against him, he provides no legal or factual basis for any such a challenge. Once again, Thomas' claim has no basis in the record and was correctly dismissed.

*4. Thomas' trial counsel was not deficient for failing to cite the "fruits of the poisonous tree" doctrine in a motion to suppress.*

Thomas argues his counsel was ineffective for not citing the "fruits of the poisonous tree doctrine" to suppress evidence in his second criminal case. The district court suppressed Thomas' statements used to obtain a search warrant in both cases filed against Thomas. Thomas presumably believes his counsel should have asked the district court to also exclude evidence discovered as a result of the search warrant (a white t-shirt and denim shorts with blood on them and a receipt showing Thomas bought a Ruger P94

pistol and .40 caliber ammunition). On appeal, Thomas simply repeats his same conclusory claim and ignores the district court's rationale for denying the claim below. As the district court explained, the Supreme Court rejected Thomas' challenge of the denial of his motion to suppress the items discovered as a result of the search warrant. In his direct appeal, the Supreme Court analyzed the affidavit and found that even without these statements, the affidavit contained sufficient evidence to support a finding of probable cause. *Thomas*, 302 Kan. at 452-54. Thomas cannot use his K.S.A. 60-1507 motion as a substitute for a second appeal. Rule 183(c)(3).

We also find Thomas' counsel was not ineffective because the fruit of the poisonous tree doctrine does not apply to exclude physical evidence that surfaced because of an un-*Mirandized*, voluntary statement. See *State v. Schultz*, 289 Kan. 334, 343-44, 212 P.3d 150 (2009) (adopting *United States v. Patane*, 542 U.S. 630, 636, 124 S. Ct. 2620, 159 L. Ed. 2d 667 [2004]) ("'The *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement.'"). Thus, even if Thomas' counsel had cited the fruit of the poisonous tree doctrine, the result would be unchanged. The motion, files, and records conclusively show Thomas cannot establish he was prejudiced by this failure, so the district court correctly dismissed his claim.

*5. Thomas' trial counsel agreed with the State on the evidence presented.*

Finally, Thomas argues his counsel was ineffective because his counsel "agreed with the [S]tate regarding the evidence presented." Thomas does not explain what evidence he is referring to or how a failure to agree would have changed the outcome in his case. Thomas had to make more than conclusory contentions and either set forth an evidentiary basis for his contentions or the evidentiary basis must have been evident in the record to satisfy his burden to show his claim warrants an evidentiary hearing. See

10

*Sola-Morales*, 300 Kan. at 881. He failed to satisfy this burden in his original motion, and he makes no effort to satisfy it on appeal.

Our de novo review of the motions, files, and records of this case conclusively establishes Thomas has no right to relief on any of his ineffective assistance of counsel claims.

Affirmed.

* * *

WARNER, J., concurring: I join fully in the majority opinion's analysis of the merits of Eddie Thomas' claims for ineffective assistance of counsel. I agree that Thomas' K.S.A. 60-1507 motion does not allege constitutionally defective performance under *Strickland v. United States*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and its Kansas progeny, or warrant an evidentiary hearing. I write separately to explain an alternative reason for my decision—and to emphasize the critical importance of the appellant's burden to convince us of error, particularly in the appellant's briefing.

The purpose of appealing a district court's decision to an appellate court is twofold—to convince the court that an error has occurred and to convince us that the error merits reversal or other relief. To this end, an appellant's brief must do more than incidentally identify potential issues. It must provide an adequate discussion of a claim's factual basis to lay a foundation for the appellate court's understanding. It must set forth the governing legal lens for the court's analysis, whether based on a constitution, statute, regulation, or judicial decision. And it must *explain why*, under that governing law, an error occurred and why it requires appellate correction.

This last persuasive step in the briefing process—the explanation and analysis—is the crux of appellate practice. And though that step is essential in any appellate case, it is particularly important in the context of an appeal from a summary denial of a K.S.A. 60-1507 motion, where the district court found the issues could be resolved without an evidentiary hearing. An appellate court does not defer to a district court's analysis, but the appellant bears the burden to *convince* us that the district court erred—that the appellant's claim requires an evidentiary hearing to evaluate its merits. *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 3, 335 P.3d 1162 (2014); see K.S.A. 2020 Supp. 60-1507(b). After all, the appellant is in the best position to make this showing, having personally experienced the previous proceedings (including matters outside the record) and having filed the K.S.A. 60-1507 motion in the first place.

In cases involving claims of ineffective assistance of counsel, this means that the appellant's brief must persuade the court that there are proffered evidentiary questions, unresolved by the transcripts and other court records, that could show (1) the previous defense counsel provided constitutionally deficient representation and (2) this deficient representation prejudiced the outcome of the earlier proceeding in a meaningful way. See *Khalil-Alsalaami v. State*, 313 Kan. ___, ___ P.3d ___, 2021 WL 1945151, at *9 (2021). Judicial scrutiny of trial attorneys' performance, in proceedings often several years after the fact, is highly deferential; we presume that defense counsel acted reasonably. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). It is the appellant's role to convince us otherwise.

In my view, Thomas has not made this showing. As the majority points out, Thomas' brief merely indicates that his K.S.A. 60-1507 motion "alleges facts and conclusions which are not readily available in the record" and then summarily reiterates the allegations in that motion. The brief does not explain the substance of the evidence that Thomas would offer during a hearing or indicate why this information is different from the matters contained in the record. Nor does it provide any explanation as to how

this evidence would show Thomas' previous attorney's actions were unreasonable or how those actions affected the outcome of the trial. In short, the brief provides *no explanation* as to why this court should rule in his favor. On this basis, I would find that Thomas fails to apprise us of error.

The majority opinion takes it upon itself to divine the analytical basis of Thomas' summary allegations, largely based on the district court's well-reasoned opinion and the State's response brief. There certainly are justifications for such an effort, ranging from promoting judicial economy to achieving finality regarding Thomas' claims. But the danger to this approach is that the court runs the risk of misunderstanding the party's argument or deciding the case on a point that was never intended. It causes the court to rely more heavily on the district court's opinion than our standard of review warrants. And it converts the court's role from one of reviewing arbiter to one of inquisitor.

All that said, I am confident in this case that the majority opinion accurately depicts the assertions in Thomas' K.S.A. 60-1507 motion and that the majority's analysis of the merits of that motion is sound. I therefore join the opinion. But appellants and their counsel should be wary of making summary assertions or surface-level arguments without explanation. Other panels might more rigidly adhere to the principle that it is the responsibility of the appellant—not the appellate court—to fully develop an argument and thereby persuade the court of error.

13