NOT DESIGNATED FOR PUBLICATION

No. 114,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTY FRY, Special Representative
for SHIRLEY A. SHELTON, deceased,
*Appellant*,

v.

JAY HATFIELD MOBILITY, LLC,
*Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed July 15, 2016. Reversed and remanded for new trial.

*W.J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellant.

*Patric S. Linden* and *Kevin D. Case*, of Case Linden P.C., of Kansas City, Missouri, for appellee.

Before GREEN, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*:  Shirley Shelton suffered from polio in her early childhood, and it continued to affect her the rest of her life. In 2002, Shelton began using a wheelchair. She was able to move to and from the wheelchair on her own, do some walking, and perform small household chores. In order to be more mobile, in 2008 Shelton purchased a van equipped with a platform and controls that accommodated her wheelchair.

Shelton purchased a motorized wheelchair from Jay Hatfield Mobility (Hatfield). Linda Kennedy was employed as a mobility specialist at Hatfield's Pittsburg facility.

1

Shelton also purchased an EZ Lock System for her van so that she could drive the van without getting out of her motorized wheelchair. Kennedy made the arrangements to transport Shelton to and from Hatfield's facility for installation of the EZ Lock.

On March 3, 2009, Kennedy arrived at Shelton's home to transport her to the Hatfield facility. Rita Lashley accompanied Shelton and Kennedy on their trip. Marty Fry, Shelton's nephew, was present when Kennedy arrived. Kennedy asked Fry to put Shelton's manual wheelchair in the back of Shelton's van in case they might have to leave the motorized wheelchair and Shelton's van at Hatfield's shop for installation, in which case they would have to return home in a different van. Fry testified that he asked Kennedy to call him if that happened so he could meet them at Shelton's home and help unload Shelton from the van. Kennedy did not recall Fry making this request.

When they arrived at Hatfield's facility, the technician who was to install the EZ Lock pin was unavailable so they left Shelton's van and the motorized wheelchair and returned home in Hatfield's van with Shelton in the manual wheelchair. Kennedy did not call Fry after the plans changed.

When they returned to Shelton's home, Kennedy had Lashley help her set up the ramp from the van. Kennedy untied the restraints on Shelton's wheelchair. At some point the wheelchair rolled down the ramp and Shelton was pitched out onto the driveway, fracturing her right leg and severing a nerve in her leg.

Shelton brought this negligence action against Hatfield. At trial, the jury found Hatfield 62% percent at fault and Shelton 38% at fault. Total damages were found to be $349,042.48, which resulted in a net judgment of $216,406.34 after deducting the fault attributed to Shelton. Hatfield appealed, and the judgment was set aside and the case remanded for a new trial due to the trial court's error in instructing the jury on

2

Restatement (Second) Torts § 324 (1964). *Shelton v. Jay Hatfield Mobility, LLC*, No. 106,394, 2012 WL 6634394 (Kan. App. 2012) (unpublished opinion), *rev. denied* December 27, 2013.

Shelton died before the retrial, so Fry was substituted as the representative of Shelton's estate in what was now a survivor action.

On retrial, the parties stipulated to Shelton's economic damages, but her claimed noneconomic damages remained in dispute. Significant portions of the testimony from the first trial were read to the jury in lieu of live testimony.

At the instructions conference, the court refused Fry's request for instructions on Restatement (Second) Torts §§ 324 and 327. In the court's contentions instruction, Hatfield's contentions consisted of the following:

> "The defendant denies:
> "Defendant denies that Linda Kennedy was at fault. Defendant does not deny the physical injuries plaintiff sustained on March 3rd, 2009, does not deny the amount of plaintiff's medical bills and domestic services specified in the stipulation the parties have entered into. But defendant does deny the nature and extent of plaintiff's claim for noneconomic damages.
>> "The defendant's burden of proof:
>> "The defendant has the burden to prove that its claims are more probably true than not true."

Hatfield made no claim of comparative fault in this instruction, so the statement about the defendant's burden of proof was superfluous. In a separate instruction, and notwithstanding the fact that the jury was provided with no contention of fault against

Shelton, the court instructed the jury that it could assess fault against Shelton as well as Kennedy. The verdict form conformed to this notion of comparative fault.

Before closing argument, Fry moved for judgment as a matter of law on any claim that Shelton was at fault. He argued that because Hatfield made no claim of comparative fault in the contentions instruction, Shelton's name should not appear on the verdict form. The district court denied Fry's motion, stating: "I do not believe that assessment—or elaborating that Shirley Shelton is at fault is necessary on PIK 106.01." The court ordered Fry's counsel not to argue in closing the fact that no claim of fault was asserted against Shelton in the jury instructions.

The jury found Hatfield and Shelton to be equally at fault; thus, no damages were awarded. After the court denied Fry's motion for a new trial, this second appeal followed.

On appeal, Fry argues that the trial court erred (1) in allowing the jury to assess fault against Shelton when Hatfield made no contention in the jury instructions that Shelton was at fault and in not permitting Fry's counsel to argue this in closing; (2) in not instructing the jury on Restatement (Second) Torts § 324; and (3) in not instructing the jury on Restatement (Second) Torts § 327 (1964).

*Erroneous Contentions Instruction*

■ *Appealable issue*

Hatfield asserts that Fry is precluded from raising on appeal the claimed error in the contentions instruction. The same contentions instruction was used in the first trial of this case. After the first trial, Hatfield appealed but this contentions instruction was not challenged by means of a cross-appeal.

4

As stated in *City of Wichita v. Rice*, 20 Kan. App. 2d 370, 376, 889 P.2d 789 (1995), courts retain the inherent power to review their own proceedings until a final judgment is entered in order to correct errors and to prevent injustice.

The relevant statutory provision, K.S.A. 60-2103(h), does not require a prevailing litigant to cross-appeal an adverse ruling. The statute states that an appellee may cross-appeal an issue if he or she "desires" to do so. Fry asserts the legislature understood that the statute gives the prevailing party the option of protecting the verdict rather than challenging an adverse ruling at the appellate level.

Following the first trial Hatfield appealed and sought to set aside the verdict and have the case remanded for a new trial due to the trial court's claimed error in instructing the jury on Restatement (Second) Torts § 324 (1964). Fry chose not to cross-appeal the issue regarding the trial court's contentions instruction apparently on the theory that while the assessment of fault against Shelton reduced the damage award, half a loaf was better than none at all.

Hatfield relies primarily on *Cooke v. Gillespie*, 285 Kan. 748, 176 P.3d 144 (2008), which involved a dispute between two attorneys over which one of them was responsible for litigation expenses in a case they had settled. Funds set aside in a trust fund pending resolution of the issue were ultimately paid into court in an interpleader action. Cooke moved for summary judgment on Gillespie's claim to these funds. Cooke's motion was based on the statute of limitations. Gillespie filed a cross-motion arguing that if his claim was barred by the statute of limitations, Cooke's claims to the funds were likewise barred by the same statute. Judge David Kennedy denied both motions.

The interpleader action was then assigned to Judge Rebecca Pilshaw. After a bench trial, Judge Pilshaw rejected Gillespie's claims to the funds without reference to the

statute of limitations defense. Gillespie appealed. On appeal, Cooke not only did not raise the statute of limitations issue in a cross-appeal, but he specifically argued that the only issues remaining are "'equitable claims based on the doctrines of common fund and *quantum meruit*.'" 285 Kan. at 752. The Court of Appeals reversed based on these equitable doctrines with no reference to the statute of limitations. The case was remanded to the district court "'for the determination of an equitable division of the expenses of litigation and a distribution of the funds held by the clerk of the court.'" 285 Kan. at 759.

On remand, the matter was heard by Judge Benjamin Burgess. Contrary to the Supreme Court's clear mandate on the scope of proceedings on remand, Cooke again moved for summary judgment on Gillespie's claim based on the statute of limitations. Again, Gillespie filed a counter-motion. Limiting his consideration to the Supreme Court's mandate, Judge Burgess found that under principles of equity the parties should share equitably in the litigation expenses. Cooke appealed.

On appeal, the Supreme Court found that Cooke's statute of limitations defense had not been preserved because he did not cross-appeal Judge Kennedy's ruling on the issue and did not raise the issue when arguing against Judge Pilshaw's ruling on appeal.

In the first appeal in *Cooke*, the appellee specifically identified the equitable issues and not the statute of limitations as the issues to be decided, thereby effectively abandoning or waiving the statute of limitations issue. The statute of limitations is an affirmative defense which a party may waive. *Diversified Financial Planners, Inc. v. Moderak*, 248 Kan. 946, 948, 811 P.2d 1237 (1991).

Unlike in *Cooke*, we see nothing in the record indicating that Shelton had specifically abandoned the contentions instruction issue as a matter to be dealt with on remand. Further, the appellee in *Cooke* sought on remand to litigate issues beyond the

6

scope of the appellate court's mandate, which was a retrial of the case "'for the determination of an equitable division of the expenses of litigation and a distribution of the funds held by the clerk of the court.'" Contrary to the mandate, Cooke sought to raise again the statute of limitations issue. In our present case, the Court of Appeals concluded in the initial appeal:

"If Lashley had no duty to Shelton, then there can be no breach of that duty and, hence, there can be no negligence for which Lashley may be held responsible.

"We find the trial court was correct to give an instruction based on Restatement (Second) Torts § 323 as § 323 has been adopted in this state. There was substantial evidence in support of the claims. We make no conclusion on whether Restatement (Second) Torts § 324 should be adopted in Kansas, but we find the evidence was insufficient to support a jury instruction under § 324. Therefore, we must remand this matter for a new trial without an instruction based on § 324.

"We also find the trial court did not err in refusing to give a jury instruction based on PIK Civil 4th § 171.43 involving pre-existing conditions and refusing to allow the jury to compare the fault of Lashley.

"Affirmed in part, reversed in part, and remanded for a new trial." *Shelton*, 2012 WL 6634394, at *13-14.

Shelton did not seek to litigate issues beyond the scope of the mandate.

In *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 16, 270 P.3d 1 (2011), the Court of Appeals addressed the binding effect of a mandate for a new trial:

"'Where the mandate of an appellate court merely reverses a ruling of the district court and remands the case for further proceedings but does not direct judgment of the district court, the district court has discretion to preside over the remaining trial proceedings, as if the district court had originally made the ruling mandated by the appellate court. [Citation omitted.] In other words, a district court may address those

7

issues necessary to the resolution of the case that were left open by the appellate court's mandate.' [Citations omitted.]"

On remand of our present case after the first appeal, there arose the issue of whether the trial court may properly instruct the jury that it can determine that a party is at fault when the jury is not told in what respect that party is claimed to be at fault and when the jury is not told who has the burden to prove that party's fault. Raising this issue did not exceed the scope of the appellate court's mandate on remand.

If Fry is right about the claimed error in the contentions instruction at the retrial, it appears to us the trial court would be ignoring its duty to conduct a fair trial if it were free to not instruct the jury on the contentions of the parties and the principles of law that apply in the resolution of those contentions.

On a somewhat collateral issue, our Supreme Court held in *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011), that while an issue not raised below may be barred from consideration on appeal, the issue may be considered by the trial court when the case is remanded. Under the rationale of this holding, we fail to see how the cross-appeal rule gives the trial court on remand free reign to instruct the jury over a party's timely objection if, as Shelton contends, it clearly was error to do so.

In *State v. Morton*, 283 Kan. 464, 472-73, 153 P.3d 532 (2007), Morton was charged with shooting and killing a store manager in the course of a robbery. Before trial, the district court issued an order in limine preventing the State from presenting the testimony of a ballistics expert. Morton was convicted and appealed. The State did not cross-appeal the adverse ruling on the motion in limine. Our Supreme Court reversed and remanded for a new trial. Before the retrial, the district court reversed its earlier ruling and permitted the State's expert witness to testify at the second trial. Morton was

8

convicted a second time. On appeal, he argued that the district court's original ruling on the motion in limine was the law of the case. But the Supreme Court concluded that "the issue of that testimony never arose on Morton's first appeal. In such a situation, the district court had the discretion, and perhaps even the duty, to consider the issue anew on remand." 283 Kan. at 473. Further, the requirement in K.S.A. 60-2106(c) that the Supreme Court's mandate and opinion control further proceedings did not apply because "[t]he admissibility of [the State's expert's] testimony was not addressed in Morton's first appeal or in the mandate to which it gave rise. Thus there was nothing to 'control' the conduct of the district court on this issue." 283 Kan. at 473.

Morton also argued that the State failed to cross-appeal the district court's order in limine before the first trial. The Supreme Court concluded:  "The State had no duty to cross-appeal the original motion in limine ruling, and we have already discussed and rejected defendant's assertion of double jeopardy protection." 283 Kan. at 473. In that double jeopardy analysis, the court noted the general rule that "'[a]n accused waives his right to plead double jeopardy when after conviction he applies for and is granted a new trial.'" 283 Kan. at 468. Morton initiated the first appeal and sought a new trial. Having done so, there would have been no double jeopardy impediment to the State cross-appealing the original order in limine. But having chosen not to cross-appeal, the State was still free to raise the issue on remand.

In *State v. Cady*, 254 Kan. 393, 867 P.2d 270 (1994), Cady's taped confession was admitted into evidence at his first trial. Cady appealed his conviction but did not raise the issue of the admission of his taped confession on appeal. His conviction was reversed on appeal, and the case was remanded for a new trial. At the retrial, his taped confession was again admitted and Cady was again convicted. In his second appeal, Cady claimed the trial court erred in admitting his confession because he did not knowingly and voluntarily waive his *Miranda* rights. Our Supreme Court held that notwithstanding Cady's failure to

9

raise the issue in his first appeal, "the issue whether or not it was error to admit the videotaped confession into evidence is properly before us and can be addressed."

From our review of these authorities, we conclude that the jury instruction issue raised by Fry in this appeal is properly before us.

■ *The Contentions Instruction, the Instruction Stating the Parties Whose Fault May Be Compared, and the Jury Verdict Form Were Given in Error.*

In analyzing jury instruction issues, we must (1) determine whether the issue can be reviewed; (2) determine whether any instructional error occurred; and finally (3) determine whether the error requires reversal. *Siruta v. Siruta*, 301 Kan. 757, 771, 348 P.3d 549 (2015).

We have already addressed issue (1) above. Further, there is no question that the issue was preserved during the retrial. When this case was remanded for a new trial, Fry repeatedly objected to the court's failure to instruct on the contentions of fault attributed to Shelton. He did so in a motion for judgment as a matter of law at the close of all the evidence, at the court's instructions conference, and in his motion for a new trial.

With respect to issue (2) above, we examine the "'jury instructions as whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.' [Citation omitted.]" *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014). See *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010). We consider not only whether the challenged instructions fairly state the applicable law, but also whether they were factually appropriate.

10

With respect to issue (3) above, reversal is required "'if there is a reasonable probability that the error will or did affect the outcome of the trial in light of the record as a whole.' *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* ___ U.S. ___, 132 S. Ct. 1594 (2012)." *Siruta*, 301 Kan. at 772. The burden to show harmlessness shifts to the party benefitting from the error. *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

Turning to the instruction central to this dispute, PIK Civ. 4th 106.01 sets forth the form instruction to be used in informing the jury of the parties' admissions, denials, claims, and defenses and the burden of proof on the various claims. Although the use of PIK instructions is not required, it is strongly recommended, as these ""'instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions."' [Citation omitted.]" *State v. Acevedo*, 49 Kan. App. 2d. 655, 663, 315 P.3d 261 (2013). See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009). With respect to a defendant's claims and contentions, PIK Civ. 4th 106.01 provides:

"The defendant admits:
        "[State briefly any facts admitted or not disputed.]
"The defendant denies:
        "[that *(he) (she)* was at fault.]
        "[that plaintiff was injured or damaged to the extent claimed.]
        "[generally, plaintiff's claims.]
"The defendant claims:
        "[that the plaintiff was at fault in the following respects:  (*Set forth concisely the specific grounds of negligence that are supported by the evidence*)].
"The defendant's burden of proof:
        "The defendant has the burden to prove that *(his) (her)* claims are more probably true than not true. [It is not necessary that each of you agree upon a specific claim.]"
(Emphasis added.)

11

The Notes on Use to PIK Civ. 4th 106.01 state: "This instruction must be given in every case. However, due to the variety of claims and legal theories that can be presented in a civil case, the instruction must be adapted to fit the issues in a particular case."

Because this is a negligence action, the jury must be instructed on the issue of the fault of all parties and nonparties against whom a claim of comparative fault is made so long as there is supporting evidence. See *Kennedy v. City of Sawyer*, 228 Kan. 439, 460, 618 P.2d 788 (1980). The Comment to PIK Civ. 4th 106.01 cites *Zak v. Riffel*, 34 Kan. App. 2d 93, 115 P.3d 165 (2005), and states: "Jury instructions that fail to properly inform the jury of each party's burden to prove their respective claims and defenses are clearly erroneous. [34 Kan. App. 2d 93, Syl. ¶ 6.]"

In contrast to the PIK Civ. 4th 106.01 contentions instruction, in the retrial of this case the court instructed the jury in Instruction No. 9 in relevant part as follows:

"The defendant denies:

"Defendant denies that Linda Kennedy was at fault. Defendant does not deny the physical injuries plaintiff sustained on March 3rd, 2009, does not deny the amount of plaintiff's medical bills and domestic services specified in the stipulation the parties have entered into. But defendant does deny the nature and extent of plaintiff's claim for noneconomic damages.

"The defendant has the burden of proof:

"The defendant has the burden to prove that its claims are more probably true than not true."

Fry made a claim of negligence and consequential damages which was detailed in the first part of the instruction. While Hatfield denied Fry's claim that Kennedy was at fault and the nature and extent of Shelton's noneconomic damages, Hatfield made no claim that Shelton was at fault. In fact, Hatfield made no claim

12

whatsoever. It did not contend the comparative fault of anyone, party or nonparty. Thus, the only issues to be resolved by the jury were (1) the fault of Kennedy, which Hatfield denied, and (2) the nature and extent of Shelton's noneconomic damages. Fry bore the burden of proof on those issues.

Then, in Instruction No. 10, the court instructed the jury to compare the fault of the parties, though there was no contention of comparative fault in the instructions. In Instruction No. 17, the court instructed the jury that it could assign fault to Kennedy, Shelton, or both of them. The verdict form asked the jury to determine the fault (from 0% to 100%) of both parties though there was no claim in the instructions that Shelton was at fault.

Hatfield contends that the comparative fault of Shelton had always been a part of the case, and it alleged Shelton's comparative fault in the pretrial order. Of course, the jury would have no knowledge of this. The record on appeal includes only bits and pieces of the trial proceedings. We have no record of any preliminary instruction to the jury, the opening statements of the parties, their closing arguments, and most of the testimony. Based on the record before us, the only thing the jury knew about the claims of the parties was the claim that Hatfield, through Kennedy, its employee, was at fault in causing the accident that resulted in Shelton's injuries and damages. Thus, in Instruction No. 17 and in the verdict form, the jury was left to speculate about what acts or inaction of Shelton were claimed to have caused or contributed to the accident and her injuries.

The jury was instructed that Fry had the burden to prove Shelton's claims of fault and the nature and extent of her injuries and damages. But since Hatfield made no identifiable claim in the jury instructions, the jury was left to speculate whether Hatfield had to prove anything at all. The instruction said that "[t]he

defendant has the burden to prove that its claims are more probably true than not true." But since Hatfield made no claim, that portion of the instruction was entirely superfluous.

*Zak* involved a wrongful death action brought by the widow of Michael Zak against the physician who treated her husband for obesity and cardiomyopathy. At issue on appeal was the contentions instruction in which the defendant claimed that Zak's death was the result of a preexisting condition "that was aggravated by Michael's obesity and lifestyle." The jury assessed 49% of the fault to Zak. On appeal, the court determined that the instruction was "fatally defective" because: (1) the instruction failed to specify any allegations of fault on Michael's part; and (2) the instruction failed to set forth the defendant's burden of proof on the issue of fault. The court stated, "if fault is to be compared, the trial court must correctly instruct the jury on the specific claims of fault by each party and the respective burdens of proof pursuant to PIK Civ. 3d 106.01." 34 Kan. App. 2d at 105.

In contrast, Hatfield relies on the unpublished opinion in *Tichenor v. City of Topeka*, No. 106,384, 2012 WL 3136219, at *7 (Kan. App. 2012), *rev. denied* August 29, 2013. *Tichenor* involved an action for battery and negligence by an arrestee against the city's police officer who allegedly injured plaintiff while he was being handcuffed. The jury instructions failed to inform the jury that the city had the burden to prove that the plaintiff was at fault. The jury assigned 80% of fault to the plaintiff. On appeal, the court affirmed, noting that the trial court specifically identified the actions taken by plaintiff that led to the police officer using force to arrest him. Thus, the jury could not have been misled by the instruction. 2012 WL 3136219, at *7.

*Tichenor* does not apply. There is no record of the trial court or anyone else identifying the acts or omissions of Shelton that allegedly caused or contributed to cause

14

the accident and her injuries. The court's Instruction No. 10 defined negligence and stated that a party is at fault when he or she is negligent and that negligence led to the event which brought about the claim of damages. But in no instruction was there an assertion that Shelton was at fault, much less any specifics as to the manner in which she caused or contributed to the accident that led to her injuries and damages. Nevertheless, the jury verdict form allowed the jury to assign fault to her.

The parties are free to assert in their pleadings whatever they believe constitutes fault or comparative fault of a party. In fact, under our notice pleading scheme a defendant like Hatfield may simply allege the comparative fault of a plaintiff such as Shelton with no specifics whatsoever. But like the pretrial order, the contentions instruction at trial forces the parties to specifically identify the various claims and defenses to be resolved by the jury. To state the obvious, if the jurors are to resolve disputed claims or defenses, it is a good idea for the court to tell them what those claims and defenses are.

In formulating a contentions instruction, the trial court serves as a gatekeeper requiring the parties to make specific allegations of fault and requiring that the specific allegations are supported by evidence presented at trial. The old and probably apocryphal instruction to the jury simply to "go out and do the right thing" simply will not do. Such an instruction, like the instructions given here, gives the jury a roving commission with no guidance on specific allegations of fault. As described in *McNeill v. City of Kansas City*, 372 S.W.3d 906, 910 (Mo. App. 2012), such a roving commission "allows the jury to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic to impose liability." As stated in *Lear v. Norfolk and Western Ry. Co.*, 815 S.W.2d 12, 16 (Mo. App. 1991):  "An instruction on contributory negligence (now comparative fault) is too general and amounts to a roving commission when it fails to

15

advise the jury what acts or omission of the plaintiff found from the evidence, would constituted negligence. [Citation omitted.]"

We conclude that it was error to permit the jury to assess fault against Shelton when there was no contention in the jury instructions that she was at fault. Next, we must determine whether the error was harmless or whether it requires reversal. Here, Hatfield has the burden of showing that the error was harmless. As we noted earlier, we must reverse if there was a reasonable probability that the instruction errors affected the outcome of the trial.

As Fry points out, the error in the contentions instruction was compounded by the fact that the trial court prohibited Fry's counsel from pointing out to the jury in closing argument that Hatfield did not allege any fault against Shelton. Because the jury was not told what acts or omissions of Shelton were claimed to have been negligent, Fry's counsel was unable in closing argument to relate the standards for establishing negligence to specific conduct of Shelton.

Hatfield argues on appeal that allowing Fry's counsel to point out to the jury in closing the lack of any claim of comparative fault would simply have confused the jury. This argument highlights the potential for jury confusion when the jury is asked to compare the fault of the parties without being advised the nature and basis for the claim.

Giving Hatfield the benefit of the doubt, and for the sake of this argument, maybe Hatfield's specific claims of comparative negligence and its burden of proof on this issue were all made clear to the jury in Hatfield's closing argument. But we have no way of knowing because the closing arguments are not part of the record on appeal. Because Hatfield bore the burden of proving any error was harmless, it had the burden to designate those parts of the record that established harmlessness. It has failed to do so.

16

Hatfield further argues that the contentions instruction adequately informed the jury on Hatfield's "burden to prove that its claims are more probably true than not true." But because the jury was never told in the instructions that Hatfield contended that Shelton was comparatively at fault and what acts or omissions constituted Shelton's comparative fault, there were no claims against which the jury could apply the instruction's stated burden of proof. The jury was left to speculate about what those claims of comparative fault might be and was given a roving commission when it came to attributing comparative fault to Shelton.

On appeal, Hatfield makes no argument that if the instructions and verdict form were given in error, the error was harmless. Hatfield argues that substantial evidence supports the verdict. But the cases it relies upon involved claims that the evidence was insufficient to support the verdict. That is not the case here. Here, the instructions failed to inform the jury that Hatfield had a claim of comparative fault and failed to specify the conduct that Hatfield claimed was negligent. Under these circumstances, and based on our analysis above, we are unable to conclude that Hatfield has met its burden to show that the errors in the instructions and the verdict form did not affect the outcome of the trial. Accordingly, we must reverse and remand the case for another trial.

*Failure to Instruct on Restatement (Second) Torts § 324*

Next, Fry argues the trial court erred in giving jury instructions based on Restatement (Second) Torts § 324, which deals with the situation in which the one receiving aid is helpless to adequately aid or protect himself or herself. This Restatement provision states:

17

"One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by:

"(a) The failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

"(b) The actor's discontinuing his aid or protection, if by so doing lease the other in a worse position than when the actor took charge of him." Restatement (Second) Torts § 324.

In the first appeal of this case, *Shelton v. Jay Hatfield Mobility, LLC*, No. 106,394, 2012 WL 6634394 (Kan. App. 2012) (unpublished opinion), *rev. denied* December 27, 2013, the appellate court found that the trial court erred in giving a jury instruction based on § 324 because the jury found Shelton partially at fault, indicating that she was not helpless.

The law of the case doctrine prevents relitigation of the same issues within successive stages of the same lawsuit. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1212, 308 P.3d 1238 (2013). The doctrine is similar to collateral estoppel, which prevents parties from relitigating an issue a court has decided on the merits in another action. *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 266, 261 P.3d 943 (2011). The law of the case doctrine serves the same function within a single case on an issue the court has considered and decided. See *State v. West*, 46 Kan. App. 2d 732, 735-36, 281 P.3d 529 (2011). All questions decided in the previous appeal are settled law and will generally not be reconsidered. *Leffel*, 47 Kan. App. 2d at 16.

Fry has not provided any new or different arguments to support our consideration of this claim of error. Applying the doctrine of the law of the case to this issue, Fry's argument fails.

18

*Failure to Instruct on Restatement (Second) Torts § 327*

Finally, Fry contends the trial court erred in refusing to give a jury instruction based on Restatement (Second) Torts § 327 involving Fry's theory that Kennedy negligently prevented or disabled Fry from giving aid to Shelton upon their arrival at her residence. Restatement (Second) Torts § 327 provides:

> "One who knows or has reason to know that a third person is giving or is ready to give another aid necessary to prevent physical harm to him, and negligently *prevents or disables* the third person from giving such aid, is subject to liability for physical harm caused to the other by the absence of aid which he has prevented the third person from giving." (Emphasis added.)

Fry claims § 327 applies based on Fry's testimony that he was concerned about Kennedy's ability to safely unload Shelton and his assertion that he explicitly asked Kennedy to contact him upon her arrival at Shelton's residence, which she failed to do.

Our Supreme Court had not adopted § 327 as law in Kansas. The trial court declined to give the instruction, finding there was no "active intervention" by Kennedy to prevent the aid offered by Fry.

Fry cites *LeBeck v. William A. Jarvis, Inc.*, 250 F.2d 285 (3d Cir. 1957), which involved the failure to notify the electric company of digging near an electric transmission line so that the electric company could shut off the power. Fry also relies on *Boston Fish Market Corp. v. Universal Ins. Co.*, 388 F.2d 773 (1st Cir. 1968), in which the pier authority, in reporting a fire on a fishing vessel moored at the pier, failed to inform the fire department that a fire hydrant near the fire was not in operation, causing a delay in fighting the fire. Both cases relied, at least in part, on § 327.

Fry contends that in similar fashion Kennedy failed to contact him to help unload Shelton when she returned home. We fail to see how Kennedy not calling Fry amounted to negligently preventing or disabling Fry from aiding in unloading Shelton. We find no evidence that Kennedy failing to call Fry upon her arrival at the residence was the proximate cause of Shelton's injuries. Without direct evidence that Kennedy prevented or disabled Fry from rendering assistance, we conclude that the trial court did not err in refusing to give a jury instruction patterned after § 327. See *Gomes v. Commercial Union Ins. Co.*, 258 Conn. 603, 783 A.2d 462 (2001).

Reverse and remand for a new trial.